## Case No. 16,153.

### UNITED STATES v. RICE.

[1 Hughes, 560.] [1]

Circuit Court, W. D. North Carolina.    May, 1875.

HOMICIDE—KILLING BY UNITED STATES MARSHAL—RESISTING ARREST.

If a person charged with an offence against the law, after making public threats against the life of an officer ordered to arrest him, when that officer proceeds to make that arrest, so acts with rifle in hand, as to make that officer believe that he intends to execute his previous threat, the officer is justified in the instant of danger to himself in taking the life of the person to be arrested.

On the 15th of last September, Andrew Woody, of Spring Creek, Madison county, was killed by Noah H. Rice, a United States deputy marshal, who was endeavoring to serve a capias on him for violation of the internal revenue laws. From facts developed before the court it appears that Woody had expressed a determination to resist any process which might issue against him, and had threatened to kill the defendant Rice if he attempted to arrest him. When this officer came upon Woody the latter was armed with a rifle. His demeanor was hostile, and when commanded to surrender he so acted as to impress the officer with the belief that his intention was to shoot him, and in self-defence he fired upon Woody with fatal effect. Rice came to Asheville and surrendered himself to the authorities, was examined by Commissioner Watts on application for bail, and committed to jail. His case was finally removed to the United States court, on Tuesday, May 11, 1875. He was placed upon trial for his life. The jury having requested full instructions from the bench, they were given as follows by

DICK, District Judge (charging jury). As this is a case of considerable importance to the defendant, and also to the due administration of justice, I have deemed it proper to commit to writing my instructions to the jury upon the questions of law involved. In this court in a trial for crime before one judge, defendants have no right to appeal, and the only remedy which they can have for misdirections to the jury on the part of the judge, is a motion for a new trial to be heard before the other judges of the court who were not present at the trial; then, upon a certificate of a division of opinion between the judges upon questions of law, the case may be carried to the supreme court for review. In all capital felonies tried by me sitting alone, I will allow defendants who may be convicted the benefit of these remedies; and I will always reduce to writing my instructions to the jury so that if I commit an error it may be corrected by the other judges who are authorized to preside in this

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

court. All persons whose lives are put in jeopardy by a trial in court ought to have the benefit of all remedies afforded by law to guard against error and injustice. The humane and remedial provisions of the law ought to be fully afforded by courts of justice in favor of human life. The defendant in this case is charged with murder by an indictment found in the state court, and removed under the provisions of an act of congress to this court. This court has no original jurisdiction of the offence charged, but the case must be tried in the same manner as cases originating in this court; that is, the forms and modes of proceeding and the rules of evidence must be regulated by the course and practice of this court in criminal trials. The law which defines the offence is the criminal law which prevails in this state. This indictment is not founded upon a state statute, but is for an offence at common law. The laws of this state declare that the common law, with certain specified modifications, shall be in full force in this state. If the indictment was founded upon a state statute, we would be bound to regard the construction and exposition placed upon such statute by the supreme court of the state as a rule of decision. As it is founded upon the common law, we will look to the decisions of the state supreme court as highly important guides, but not as absolute authorities. We are at liberty to derive information as to the principles of the common law from the decisions of all the courts of England and this country which profess to administer criminal justice according to that wise, just, and time-honored system of law.

It is conceded that the alleged homicide was committed by the defendant, and he places his defence upon the ground that he was a regularly constituted officer of the United States, and had in his hands at the time of the homicide the process of law which authorized and commanded him to arrest the deceased for a crime against the United States; that the deceased resisted the execution of such process with a deadly weapon in his hands, and had manifested a purpose to use such deadly weapon in resistance; and that the homicide was necessarily committed in the attempt to make an arrest. This defence necessarily leads us to inquire what protection the common law affords to ministerial officers, and how far they are authorized to go in the performance of their public duties. Social order and political government are dependent upon the observance of law by the citizen. The mandates of the law are executed by officers provided for such purposes, and such officers are invested by the law with the authority necessary to execute its mandates, and it affords them all the protection possible in the rightful performance of the duties imposed. This rule is absolutely necessary for the advancement of justice, and is founded in wisdom and equity

and in the principles of social and political order. The law must be supreme within the sphere of its operation, or its influence would be nugatory, and there would be no certain rule to regulate human conduct in society and government, and all the rights and liberties of citizens would soon be lost in a chaos of anarchy. Mr. Justice Foster says: "Ministers of justice while in the execution of their offices are under the peculiar protection of the law." Fost. Crown Law, 308. If an officer is killed while performing his duty, the law deems such killing murder of malice prepense. This protection is not confined to the precise time when the officer is performing his official duty, but extends over him while going to, remaining at, and returning from the place of action. Any opposition, obstruction, or resistance intended to prevent an officer from doing his official duty, is an indictable offence at common law, and the punishment is regulated by the nature of the offence.

An officer is authorized to summons as many persons as may be necessary to assist him in the performance of his legal duties, and such persons are bound to obey such summons, and they are under the same protection afforded to officers, as they are for the time officers of the law. The law imposes upon private persons the duty of suppressing affrays, preventing felonies from being committed in their presence, and arresting such offenders and bringing them to justice; and such private persons, while performing their duties, are under the protection of the law. We may confidently lay down the broad general principle, that when any person is performing a public duty required of him by law, he is under the protection of the law. An officer of the law who has legal process in his hands is bound to execute it according to the mandate of the writ. If he is resisted in the performance of this duty, he must overcome such resistance by the use of such force as may be necessary for him to execute his duty. If necessary, the law authorizes him to resort to extreme measures, and if the resisting party is killed in the struggle the homicide is justifiable. Garrett's Case, 1 Winst. 144. If unnecessary and excessive force is used, after resistance has entirely ceased and the defendant in the writ has manifested his willingness to submit to the mandates of the law and be arrested, then if the said defendant is killed the officer will be guilty of manslaughter; and if the blood had time to cool, the killing would be murder. 2 Whart. Cr. Law, 1030, 1031, and authorities referred to in note. If, however, the defendant in the writ only ceases his resistance upon the officer desisting from his attempt to arrest, and still keeps himself in a condition to renew the resistance with a deadly weapon, if the officer should renew the effort to arrest, and the officer cannot make the arrest without great personal danger, he would be justified in killing the defendant. The submission of the defendant in such a case is not complete, and as long as he refuses to be arrested he is in a state of resistance; and if he is armed with a deadly weapon, and has manifested an intent to use it, and still keeps the weapon in his possession convenient for an emergency, and the officer has reasonable grounds for believing that the weapon will be used if an arrest is attempted, the officer is not required to risk his life in a rencounter, or desist from an effort to perform his duty. When a person puts himself in an armed and deadly resistance to the process of the law, he becomes virtually an outlaw, and officers are not required to show him the courtesy of a chivalrous antagonist and give him an open field and fair fight. It is only when a criminal submits to the law that it throws round him the mantle of protection and administers justice with mercy. It is the duty of every offender charged with crime in due process of law to quietly yield himself up to public justice. State v. Bryant, 65 N. C. 327; State v. Garrett, 1 Winst. 144.

A known officer, in attempting to make an arrest by virtue of a warrant, is not bound to exhibit his warrant and read it to a defendant before he secures him, if he resists; if no resistance is offered, the officer ought always, upon demand made, show his warrant to the party arrested or notify him of the substance of the warrant, so that he may have no excuse for placing himself in opposition to the process of the law. This is only a rule of precaution. A defendant is bound to submit to a known officer; to yield himself immediately and peaceably into the custody of the officer before the law gives him the right of having the warrant read and explained; when in resistance, the law shows him no favor. A defendant, knowing the arresting party to be an officer, is bound to submit to the arrest, reserving the right of action against the officer in case the latter be in the wrong. When a person acts in a public capacity as an officer, it will be presumed that he was rightfully appointed. 1 Whart. Cr. Law, §§ 1289, 2925; Cooley's Case, 6 Gray, 350. One who is not a known officer ought to show his warrant and read it, if required; but it would seem that this duty is not so imperative as that a neglect of it would make him a trespasser ab initio, when there is proof that the party subject to be arrested had notice of the warrant, and was fully aware of its contents, and had made up his mind to resist its execution at all hazards. Garrett's Case, supra.

The law, in its humanity and justice, will not allow unnecessary force to be used in the execution of its process. If a defendant, without any deadly weapon or manifestation of excessive violence, makes resistance, an officer is not justified in wilfully shooting him down; but if a defendant has a deadly weapon, and has manifested a purpose to use it if an arrest is attempted, the officer is not

bound to wait for him to have an opportunity of carrying his purpose into effect. If the warrant is for a misdemeanor and a defendant attempts to avoid an arrest by flight, the officer has no right to shoot him down to prevent escape, nor even after an arrest has been made and defendant escapes from custody. Forster's Case, Lewin. Crown Cas. 187. The rule is different in cases of felony. Bryant's Case, supra. If an officer has process in his hands issuing from a court of competent jurisdiction over the subject-matter, authorizing and commanding him to arrest a defendant, he is entitled to the protection which the laws afford officers acting under process, although the process in his hands is informal and irregular. If the process is illegal and void on its face, or is against the wrong person, or its execution is attempted out of the district in which it can alone be executed, then the officer would not be under the protection of the law; but it would seem that if he kills a resisting party under such circumstances, he would only be guilty of manslaughter, unless he had actual knowledge of his want of authority, or acted from express malice.

I have stated to you many points of law which do not directly arise in the case before us; but it is important that they should be known and well understood in the country, where, in recent years, so much violence has been committed—violence in the name of law and violence in defiance of law. The principles of law involved in this case having been explained to you by the court, it is now your duty to ascertain the facts from the testimony and apply them to the law as laid down by the court.

In performing this important and solemn duty there are three points worthy of your special inquiry· (1) Whether the prisoner on trial was a known officer of the law and had in his hands, at the time of the homicide, legal process authorizing and commanding him to arrest the deceased. (2) Whether deceased made resistance to the execution of legal process with a gun in his hands, and had manifested and continued to entertain a purpose to use such gun if an arrest was attempted. (3) Whether the resistance, if made, had entirely ceased, and the deceased had yielded himself quietly and willingly into the custody of the officer, and no longer had any purpose of resistance.

Upon the first point I will state, as a conclusion of law, that it is the duty of a court to recognize its regular officers and process. I therefore instruct you that the defendant was a regularly constituted officer of this court and the process under which he professed to act was due process of law. The only questions left for you to determine on this point are: Did the prisoner have such process in his hands at the time of the homicide? Was he endeavoring to execute such process? Was he a known officer of the law? And did the deceased have good reason to believe that there was an indictment against him which made. him amenable to legal process?

The second and third points presented involve questions of fact which you must ascertain and determine from the testimony in the case. To aid you in the performance of this duty, I will now, in obedience to the requirements of the law, proceed to recapitulate the testimony, and will carefully endeavor not to express an opinion on the subject. I solemnly warn you not to allow your verdict upon questions of fact to be influenced by any impressions that you may form as to the conclusions of my mind. You must form your opinions upon questions of fact from the testimony, and allow no prejudice or outside influence to control your action.

\*    \*    \*    \*    \*    \*    \*    \*

From this recapitulation and your own recollection you will perceive that the testimony is very conflicting. It is your duty carefully to consider the whole testimony and reconcile, as far as you can, any apparent conflicts; and when this cannot be done, you must believe that which you think, under all the circumstances, is entitled to the most credit. If, upon any question, you have a reasonable doubt as to the truth of the matter, you must render this doubt in favor of the defendant. This is the humane rule of the law in all criminal trials, but it is specially important and imperative in trials for capital felonies.

There are some circumstances connected with this case which I feel it to be my duty to call to your special attention, in order that they may not have an improper influence upon your action. The revenue laws have been the subject of much exciting discussion. Some persons advocate their rigorous enforcement, while others denounce such laws as unjust, inexpedient, and oppressive. All persons engaged in the execution of these laws have their warm friends and bitter opponents. No such influences should enter into and control your deliberations. A citizen on trial for crime is entitled to be confronted in court by his accusers and have them solemnly sworn to tell the truth. He is also entitled to be tried by a jury of his peers, who are free from all prejudices, and who in their action will have an eye single to justice and truth. These rights are as old as the common law; they constitute fundamental principles of English and American freedom, and have been secured in the federal and all state constitutions. They extend to all trials for crime, but they ought to be especially regarded as sacred and inviolable where human life is put in jeopardy. You, gentlemen of the jury, acting under the solemn obligations of your oath. and as fair-minded and impartial men, should discard all opinions and prejudices which you may have formed for or against the defendant, and try him as all

citizens charged with crime ought to be tried—according to the law and the testimony.

Gentlemen of the jury, if you come to the conclusion, after weighing all the testimony, that the deceased made resistance to the execution of legal process with a gun in his hands, and had manifested and continued to entertain a purpose to use such gun if an arrest was attempted, then you will find the defendant not guilty. (2) If you find that resistance was made but had entirely ceased and the deceased had yielded himself quietly and completely into the custody of the officer, and no longer had any purpose of resistance, then the prisoner is guilty of manslaughter; and if sufficient time had elapsed for the prisoner to get over the excitement caused by the resistance, then he is guilty of murder. If you have any reasonable doubts upon these questions, then the defendant is entitled to the benefit of these doubts.

The jury, after a retirement of two hours, found a verdict of "Not guilty."