# Green *v.* The State.

## Indictment for Murder.

1. *Homicide; conduct of deceased to be considered in determining degree; self-defense.*—If the circumstances attending a homicide, caused by a pistol shot fired by the accused in a rencounter not shown to have been brought on by him, both parties being armed, are such as to create the impression that the deceased had drawn or commenced to draw his pistol before the accused drew or attempted to draw his, or if a reasonable doubt is thereby generated as to whether such was the case or not, then such conduct on the part of the deceased should be considered in determining the grade of the homicide; but the homicide can not be thereby reduced to self-defense, unless the deceased made the first hostile, dangerous demonstration, and the accused had no other reasonable mode of escape.

2. *Same; when uncommunicated threat admissible in evidence.*—In such case, no witness having seen the parties at the instant the fatal shot was fired, but there being ground for argument at least, from the evidence, that the deceased must have taken some action in the matter of drawing his pistol before the accused fired, a threat made by the deceased while loading his pistol shortly before the rencounter, to the effect that before he would be run over by the accused he would kill the accused, or the accused would kill him, is admissible in evidence, although it was not communicated to the accused, as tending to show the *animus* of the deceased so recently before the homicide as to authorize its consideration

by the jury, with the other testimony, in ascertaining the conduct of the parties immediately before the firing.

3. *Same; when communicated threat inadmissible.*—Where the accused is charged with murder, and there is no evidence tending to show that the fatal act was committed in self-defense, a threat made by the deceased in the presence of, and to the accused, about a week before the homicide, that before the accused should marry a certain woman, he would kill the accused, is not admissible in evidence.

APPEAL from Macon Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

At the Spring Term, 1882, of said court, Bill Green, the appellee, was indicted and tried for the murder of John Tanner, and was convicted of murder in the second degree. The cause was tried on the plea of not guilty; and on the trial, the State examined as a witness one Martha Holland, whose testimony, while somewhat inconsistent, one part with another, may be substantially stated as follows: That one night in the latter part of December, 1881, the deceased, the defendant, and one Anderson Lewis were at her house; that she was cooking the defendant's meals about that time, and he came that night to get his supper as usual; that about the time he came in, he asked witness to fry some meat for him, when the deceased said that the witness should not fry the meat for him, and told him to fry his own meat, as he, the deceased, was doing; that the defendant then went out of the house, and, as he left, the witness said to him that she would fry his meat for him; that defendant was gone about two minutes and then came back, and asked witness whether she had fried his meat, to which the witness replied that she had not, and the defendant then said, "Damned if I don't want my meat fried;" that the deceased then said, "No, she shan't do it; you fry it yourself as I fried mine;" that at the time the defendant came back into the house the deceased was sitting before the fire eating his supper, and that after the last remark made by him, given above, he continued to eat until he had finished, and then got up and went to a table in the room, on which was a lamp, carrying the plate out of which he had been eating in his right hand, and put it on the table; that when the deceased got up to go to the table, defendant said, "Tanner, why do you treat me so," to which the deceased answered, "She shan't fry your meat;" that defendant then said, "You say she shan't fry my meat," to which deceased answered, "No;" that defendant immediately repeated the question, and the deceased made the same answer, "and immediately in giving this answer, a pistol fired, and some one jumped from the door on the piazza, and ran off, and I did not see the defendant any more." She further testified that the defendant had moved to the door while talking to the deceased; that at

[Green v. The State.]

the time the pistol was fired, and immediately prior thereto, she was not looking at either the defendant or the deceased; but that as soon as she heard the report of the pistol, she turned her head and looked at the deceased, who was advancing from the table towards the fire-place, with a pistol in his right hand pointing towards the door; that he told witness that the defendant had shot and killed him, and he then sunk on his knees, and died in a few minutes; that witness did not know where the deceased got his pistol; that she was not related to either party; that she had also been cooking for the deceased, and that the shooting took place about eight o'clock at night. The defendant offered to prove by this witness, "that about dusk of the same evening that Tanner was shot, he loaded his pistol and said to witness: 'Before I will be run over by Bill Green, I will kill Bill, or Bill will kill me.' It appeared that witness never told defendant, Bill Green, what Tanner said." But the court, on the State's objection, refused to permit him to make the proof, and he excepted. The State also examined Anderson Lewis as a witness, "and his testimony was the same as that of the witness, Martha Holland." It was also shown on behalf of the State, by the physician who was called in to see the deceased after he was dead, that the ball "entered through the left shoulder blade, ranging a little to the right, and the person who fired the shot must have been in the rear of the deceased."

The defendant then offered to prove by a witness examined on his behalf, that about a week before the shooting, the witness heard the deceased say to the defendant, that before the latter should marry Martha Holland, he, the deceased, would kill him. But the court, on the State's objection, refused to permit the defendant to make the offered proof, and the defendant excepted.

This being substantially all the evidence, "the court, among other things, charged the jury, that, under the evidence in this case, the question of self-defense did not arise;" and to this charge the defendant excepted. The defendant then asked the court in writing to charge the jury, that "if defendant, without fault on his part, was forced to shoot Tanner, in order to save his life, or his body from great harm, he had a right to strike;" but the court refused this charge, and the defendant excepted.

The rulings of the Circuit Court above noted, with others not passed on by this court, are assigned as error.

WALPOLE C. BREWER, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

(No briefs came to the hands of the reporter.)

STONE, J.—Two witnesses were present when the homicide charged in this case was perpetrated. Neither of them was looking towards the parties when the pistol was fired, and neither of them saw the act done. There is obscurity in the testimony relating to the conduct of the parties immediately preceding and attending the fatal act. Angry words were being interchanged, and the deceased spoke last. The ball entered at the back, which shows that deceased was not facing the accused when he received the fatal wound. The obscurity arises out of the following testimony: Immediately on hearing the report of the pistol, the witness testifies that she looked at the deceased, and he then had his arm extended, pistol in hand, pointing towards the door,—the place at which the accused had been last seen, and from which the pistol was fired. She saw the smoke of the pistol at the door, and heard some one spring out on the gallery. The ball entering at the back, if true, is unmistakable proof of the position the deceased occupied when he was shot. If the witness be believed, her eyes were thrown on him immediately after she heard the firing, and he had then faced around, and was pointing his pistol in the direction of the place where the accused must have been standing when he fired. This is a question for solution by the jury. It is their duty to reconcile the testimony if they can, and to ascertain, if possible, what, if anything, deceased was doing when he was shot. If the circumstances are such as to create the impression that deceased had drawn, or commenced to draw his pistol before the accused drew, or attempted to draw his pistol—or, if the circumstances generate a reasonable doubt whether such was not the case—then this should be considered in determining the grade of the homicide. It could not reduce it to self defense, unless deceased made the first hostile, dangerous demonstration, and the accused had no other reasonable mode of escape.—*Judge v. The State*, 58 Ala. 406.

There being ground for argument at least, that the deceased must have taken some action in the matter of drawing his pistol before the accused fired, this lets in the threat the witness testifies the deceased made, while loading his pistol shortly before the rencontre. If believed, it tended to show the *animus* of the deceased towards the accused, so recently before the homicide, as to authorize its consideration by the jury in ascertaining the conduct of the parties immediately before the firing.—*Burns v. The State*, 49 Ala. 370; *Myers v. The State*, 62 Ala. 599; *Roberts v. The State*, 68 Ala. 156. In ruling that this testimony should have been received, it is not our intention to intimate an opinion that the accused fired in self-defense.

[Powell v. The State.]

All we decide is, that the testimony should have gone to the jury, to be weighed by them with the other testimony. Unless the jury shall be convinced, that the deceased was in the act of drawing, or had drawn his pistol before the accused commenced to draw his, or unless a reasonable doubt is raised on this question, and in addition thereto, that the accused had no other reasonable mode of escape from the present impending peril, then he would not stand excused for firing the fatal shot. If the accused commenced first to draw, that authorized the deceased to draw in defense, and any peril thereby brought on the accused would be of his own producing, and would deny to him the plea of self-defense. The position in which the parties stood to each other at the time, should be considered in this connection.

The threat alleged to have been made by the deceased a week before the homicide, was properly excluded.—*Payne v. The State*, 60 Ala. 80.

What we have said above relates to the degree of the homicide. That offense under our statute is divided into four degrees, or classes; murder in the first and second degrees, and manslaughter in the first and second degrees. These several offenses are fully defined in our former rulings.—*Ex parte Nettles*, 58 Ala. 268; *Fields v. The State*, 52 Ala. 348; *Judge v. The State*, 58 Ala. 406; *Mitchell v. The State*, 60 Ala. 26; *McManus v. The State*, 36 Ala. 285; *Oates v. The State*, 50 Ala. 166; *Grant v. The State*, 62 Ala. 233. We are not prepared to say there was any evidence tending to show the shooting was in self-defense, and hence can not say the court erred in the instructions given and refused on that subject.

The judgment of the Circuit Court is reversed and the cause remanded. Let the prisoner remain in custody until discharged by due course of law.