# Hammond *v*. The State.

## *Murder*.

(Decided June 30, 1906.  41 So. Rep. 761.)

1. *Jury; Special Venire; Drawing Jury.*—It is not essential, under § 5004, Code 1896, that the presiding judge call out the names of the jurors as he draws them from the jury box.

2. *Same; Selection of Jurors.*—Where it affirmatively appears that the list of jurors made by the clerk was composed of the names drawn by the judge and placed in an envelope; that the names were an exact copy of the names on the list so made out, and that a copy of the names were served on the defendant one en tire day before his trial, it was not prejudicial to the defendant that the clerk did not make out a list of the names immediately after they were drawn, but kept them in an envelope and made out the list some four hours later; and, if not strictly in accordance with § 5004, any error was cured by § 4333, Code 1896.

3. *Same; Mistake in Name; Motion to Quash.*—A mistake in the name of any person drawn as a juror for the trial of a capital case, either in the venire or the copy served on defendant, is not sufficient grounds upon which to quash the venire, or delay the trial, under the express provision of § 5007, Code 1896. The court must discard such names and direct that others be forthwith summoned.

4. *Criminal Law; Evidence; Res Gestae.*—Evidence that after shooting deceased defendant shot a brother of deceased, is admissible as part of the res gestae. So, also, evidence that some of the shot from defendant's gun went through the clothes of a witness.

5. *Same; Evidence; Exclusion of Evidence.*—The party calling forth an answer responsive to his question has no right to have it excluded.

3. *Same; Opinion Evidence; Conclusions.*—A witness may not state that if certain named persons had exchanged pistols he would have seen it.  Such a statement is a mere conclusion.

7. *Same; Instructions; Impeachment of Witness.*—An instruction asserting that if the jury did not believe from all the evidence, that the witness made the contradictory statements attributed to him, then such witness was not impeached, was correct and improperly refused.

[Hammond v. The State.]

8. *Same; Credibility of Witness.*—A charge asserting that if the State's witnesses had exhibited bias against the defendant or anger, and satisfied the jury that they had not testified truly, and that they were not worthy of belief, and the jury thought their testimony should be disregarded, the jury might discard it altogether, is correct and its refusal error.

9. *Same.*—A charge asserting that if upon all the evidence the jury believed that the testimony as to the good character of certain witnesses is sufficient to overcome the impeaching testimony against them, the jury should weigh their testimony in the light of this proof of good character along with all the other evidence, falls within the exception to the rule against giving undue prominence to particular parts of the evidence, and the rule that charges should not be argumentative, is a correct charge and its refusal error.

10. *Same; Interest of Defendant as a Witness.*—A charge asserting that the jury must consider the testimony of the defendant in the light of the interest he has in the result of the prosecution, was properly given.

11. *Same; Appeal; Presumptions; Consistency of Instruction.*— Where the oral charge of the court is not set out in the transcript, it will be presumed, on appeal, that the charges given for defendant were not in conflict therewith.

12. *Same; Instructions; Reasonable Doubt.*—A charge asserting that it makes no difference in what language the definition of a reasonable doubt is clothed, when boiled down and brought to its last analysis it means no more or less than a doubt growing up out of all the evidence for which the jury can give a reason, as contradistinguished from a mere possibility, while calculated to mislead and confuse the jury, and the better practice is to refuse such charges, does not constitute reversible error.

13. *Homicide; Evidence; Admissibility; Circumstances Preceding Act.*—It is proper to limit defendant to proof of charges against deceased for violation of the ordinances, and not permit details of the act and conduct of deceased upon which the charges were based, when it appears that the defendant was marshall of the town, and the evidence tended to show that he was attempting or intending to arrest deceased on such charges at the time the killing occurred.

14. *Same; Justifiable Homicide; Arrest.*—A marshal in good faith attempting to arrest, is justified in firing first when the offender was armed with a pistol and committed an overt act evidencing an intent to immediately use the pistol under such cir-

[Hammond v. The State.]

cumstances as were sufficient to create in the mind of a rea· sonable man, and did create in the mind of the officer, the be· lief that the offender was about to draw the pistol and immediately fire.

15. *Same; Evidence; Admissibility; Threats; Bad Character.*—It was error to exclude threats alleged to have been made by deceased against defendant, and to exclude evidence tending to shcw that deceased was a turbulent, dangerous and bloodthirsty character, where the defense was that the defendant, the town marshall, was in good faith, attempting to arrest deceased for a violation of the town ordinances, when the killing occurred.

16. *Same; Instructions; Self Defense.*—Where there was evidence tending to show that defendant apprcached deceased under guise of making an arrest, but killed from vengeance or anger at deceased, instructions seeking to invoke the doctrine of freedom from fault which fail to hypothesize good faith on the part of the defendant in carrying a gun and in making the arrest, are bad and properly refused.

17. *Witnesses; Recalling Witnesses for Impeachment.*—It is within the discretion of the trial court, and not revisable on appeal, to allow the solicitor to recall defendant's witnesses for the purpose of laying a predicate to impeach them; and if permitted by the court to do so, this act does not make such witnesses state witnesses.

18. *Arrest; Police; Right to Arrest Without Warrant.*—A marshal or policeman has a right to arrest without warrant for a violation of the town ordinance committed in his presence.

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

The defendant, Abb Hammond, was indicted, tried, and convicted of killing Bud Tucker by shooting him with a gun. Before entering upon a trial of the cause the defendant moved the court to quash the venire, assigning the following reasons: "Because the special venire of 50 names was not drawn as provided by law, in that the presiding judge did not cause the clerk of the court to make out a list of the special venire immediately as provided by section 5004 of the code, and because the clerk did not immediately make out said list, and because the presiding judge of the court did not publicly draw from the jury box the names of

[Hammond v. The State.]

50 persons served on defendant as a special ve-
nire from which he is to select a jury in this case, and
cause the clerk of said court to immediately make out a
list of the 50 names and issue an order to the sheriff and
serve the same on the defendant, and because the presid-
ing judge did draw from the box 50 persons as a special
venire to try defendant's case, and caused the clerk of
said court to place the 50 names so drawn in an envelope
and seal the same and put it in his pocket, and did not
immediately make out a list of said names, but took the
said names away and four hours afterwards made out
the list; because the said judge did not call out the
names so drawn to serve as a special venire in open court,
and did not cause the clerk in the presence of the court
and in open court to make out a list, but let him seal the
same up and take it away in his pocket; because the reg-
ular list of the regular venire drawn and summoned to
serve during the second week of said term of said court
was not served on this defendant, in that C. C. Caxton
was drawn and summoned as a regular juror, and no such
man was drawn and summoned to appear and serve as
a juror for said second week, but that C. C. Caxton was
summoned to serve as a juror, when there is no such
man in Covington county, but C. C. Croxton answered
to the name of C. C. Caxton, and said Croxton was placed
on the regular panel of the jurors, but was not served
on the defendant, and because V. M. Hayes was drawn
as a juror on the regular panel, and there was no such
man on the regular panel or served on the defendant but
W. V. Hayes was put on the regular panel and not served
on defendant." The court overruled this motion. The
motion was afterwards amended, but was practically the
same motion amplified. The court, being satisfied
from the evidence that there was a mistake in the names,
of the two jurors, Hayes and Caxton, and that there were
no such persons living in Covington county, directed that
those two names be discarded, and ordered the sheriff
to summon two qualified citizens of the county to serve
in their stead. The sheriff complied by summoning C. C.
Croxton and W. V. Hayes, who were placed on the regu-
lar panel and qualified as jurors.

It appears from the evidence that Hammond was marshal of the town of Florala, and shot and killed Bud Tucker on the streets of said city with a gun ,and fired at Jim Tucker, a brother of Bud. The other facts sufficiently appear in the opinion.

There were numerous charges requested by the defendant, some of which were given and 64 of which were refused. Those refused and criticised are as follows: (55) "If in this case the jury do not, upon a consideration of all the evidence, believe the witness Jim Johnson made the statements which the witness Lawrence testified Johnson did make to him, then Johnson is not impeached. (58 "If any of the state's witnesses have exhibited malice against the defendant or anger, or have testified to contradictory statements and thereby satisfied the jury that they have not testified truly ,and are not worthy of belief, and the jury think their testimony on these accounts should be discarded, they may discard it altogether." (64) "If upon all the evidence the jury believe that the testimony as to the good character of the witnesses Jim Johnson and Bryant is sufficient to overcome the impeaching testimony against these, if there is impeached testimony, they should weigh their testimony in the light of this proof of good character along with all the other evidence in the case."

The court gave at the request of the solicitor the following charges: "(A) The court further charges the jury that they must consider the testimony of Abb Hammond, the defendant, in the light of the interest he has in the prosecution. (B) The court further charges the jury that all the charges read by defendant's counsel do not in any way conflict with, but are in harmony with, the charge given by the court, and they should not consider them to the exclusion of the charge of the court, because the written charges are only a different way of expressing the law. (C) The court further charges the jury that it makes no difference in what language the definition of a reasonable doubt is clothed. When it is boiled down and brought to its last analysis, it means no more nor less than a doubt growing up out of all the evidence in the case for which you can give a reason, as contradistinguished from a mere possibility."

[Hammond v. The State.]

C. E. REID, M. SOLLIE, and STALLINGS, NESMITH & DRENNEN, for appellant.—The record fails to disclose that the defendant was ever in court after his arraignment and the day set for his trial. This is fatal to the judgment of conviction.—*Eliza's Case,* 39 Ala. 696; *Sylvester's Case,* 71 Ala. 17; *Spicer's Case,* 69 Ala. 159; *Jones' Case,* 97 Ala. 77; *Waller's Case,* 40 Ala. 332.

The venire should have been quashed for the reasons pointed out in the motion.—*Smith's Case,* 133 Ala. 73; *Ryan's Case,* 100 Ala. 108; *Thomas' Case,* 94 Ala. 74. The threats were admissible.—*Green's Case,* 69 Ala. 9; *Gafford's Case,* 122 Ala. 64; *Robert's Case,* 68 Ala. 164.

The court erred in refusing to allow defendant to show the character of deceased as a turbulent, dangerous and bloodthirsty man.—*Green v. State,* 39 So. Rep. 365; *Roberts' Case, supra.* The court erred in declining to allow Gibson to testify as to what happened at Tucker's house just before he started for Florala.—*Burton's Case,* 115 Ala. 10; *Pitts v. Burroughs,* 6 Ala. 733. The court erred in permitting witnesses Johnson and Bryant to be recalled.—*Bell v. Burke,* 46 Ala. 261. The court erred in overruling defendant's objection to the question propounded to the witness Tucker as to what happened in Holley's restaurant.

Charges 37, 38 and 48 should have been given.—*Goodwyn's Case,* 102 Ala. 87. Charge 41 should have been given.—*Brown's Case,* 118 Ala. 111; *Picken's Case,* 115 Ala. 42; *Brown's Case,* 108 Ala. 18; *Burton's Case,* 107 Ala. 108. Charge 59 should have been given.—*Pitts' Case,* 140 Ala. 70; *Burton's Case,* 115 Ala. 1; *Frazier's Case,* 93 Ala. 45. Charge 64 was good and its refusal error.—*Byer's Case,* 105 Ala. 40; *Mitchell's Case,* 94 Ala. 73. Charge 53 was good.—*Mitchell's Case,* 129 Ala. 23. Charge 58 was good.—*L. & R. R. Co. v. Tegnor,* 126 Ala. 593; *Drum v. Harrison,* 83 Ala. 384.

MASSEY WILSON, Attorney General, for State.—The record sufficiently shows the presence of the accused, and if it does not, the bill of exceptions sufficiently shows it. —*Bradford v. Boozer,* 139 Ala. 506; *McLendon v. Grice,* 119 Ala. 513.

[Hammond v. The State.]

The court complied with section 5004 in drawing the jury, and if any errors were committed they were cured by section 5007.—*Martin v. State,* 40 Ala. 275.

As part of the res gestae the court properly permitted evidence of the shooting of other persons by the defendant.—*Seams v. State,* 84 Ala. 410; *Plant v. State,* 140 Ala. 52. The details of the charges against deceased were inadmissible.—*Carden v. State,* 84 Ala. 417; *Gordon v. State,* 140 Ala. 29. What occurred between defendant and deceased on Monday was not admissible.—*Gordon v. State, supra; Carden v. State, supra; Harkness v. State,* 129 Ala. 71. Threats alleged to have been made by deceased were not admissible.—*Johnson v. State,* 136 Ala. 76; *Gilmore v. State,* 141 Ala. 51. The charges against deceased were all misdemeanors and the authority of the officer to arrest and shoot a person so charged is defined in *Handley v. State,* 96 Ala. 48. It was within the discretion of the court to allow the witnesses Johnson and Bryant to be recalled for the purpose of impeachment.—*Braham v. State,* 38 So. Rep. 919.

All of the special charges might have been refused to defendant on the ground that under the uncontradicted evidence he was guilty of murder.—*Teague v. State,* 120 Ala. 309; *Gilmore v. State,* 141 Ala. 51. But all the charges were bad. Charges 37, 38, 46 and 48, were bad on the authority of *Mitchell v. State,* 133 Ala. 65; *Plant v. State, supra.* Charges 39, 40, 44, 45, 57 and 61 were properly refused.—*Reese v. State,* 135 Ala. 13; *Handley v. State,* 96 Ala. 48. Charges 41 and 62 were mere arguments.—*Neville v. State,* 123 Ala. 99fl Charges 43, 42, 52 and 64 were arguments also.—*Hussey v. State,* 86 Ala. 34. Charge 49 was bad.—*Mann v. State,* 134 Ala. 1. Charge 50 was misleading.—*Wilson v. State,* 140 Ala. 52. Charges 51 and 53 were bad.—*Mann v. State, supra.* Charges 54, 56 and 53 were bad.—*Teague v. State,* 144 Ala. 42; *Hussey v. State, supra.* Charges 58 and 59 were bad.—*Brown v. State,* 38 So. Rep. 268. Charge 60 was properly refused.—*Liner v. State,* 124 Ala. 4; *Winter v. State,* 133 Ala. 176. Charge A given for the state was proper.—*Smith v. State,* 118 Ala. 117. Charge C was also properly given.—*Caddell v. State,* 136 Ala. 9.

DENSON, J.—Abb Hammond was convicted in Covington circuit court of murder in the first degree and sentenced to imprisonment in the penitentiary for life. From the judgment of conviction the defendant has appealed.

The motion to quash the venire was properly overruled. Section 5004 of the code of 1896 does not require that the presiding judge shall announce the names of the jurors as they are drawn from the box; and while we think it is better practice for the clerk to make a list of the names immediately as they are drawn from the box by the presiding judge, it is unnecessary in this instance for us to decide that the statute is mandatory in this respect, as the bill of exceptions affirmatively shows that the list that was made by the clerk was composed of the identical names that were drawn by the presiding judge and placed in the envelope by the clerk, and, further, that the names served on the defendant were copies of the names on the list so made out, so that we are satisfied no injury could possibly have resulted from the manner in which the names of the jurors were drawn and disposed of, nor from the delay of the clerk in making the list.—Code 1896, § 4333. It is shown that a copy of the names of the jurors was served on the defendant one entire day before the day fixed for the trial. This was a compliance with the law.

Evidently there was a mistake in the names of the jurors Croxton and Hayes; but it is statutory, and has been many times decided by this court that this furnishes no ground for quashing the venire.—Code 1896, § 5007; *Kimbrel's Case,* 130 Ala. 40, 30 South. 454; *Longmire's Case,* 130 Ala. 66, 30 South. 413. The court conformed to the statute in discarding the names of the two jurors and ordering two others to be summoned.—Code 1896, § 5007.

The exceptions to the ruling of the court on the admissibility of evidence are numerous. The sixth, seventh, eighth, and ninth relate to the ruling permitting the state to prove that immediately after shooting the deceased the defendant shot the brother of the deceased.

[Hammond v. The State.]

In this there is no error. Shooting the brother was a part of the res gestae.—*Seams' Case*, 84 Ala. 410, 4 South. 521; *Smith's Case*, 88 Ala. 73, 7 South. 52; *Plant's Case*, 140 Ala. 52, 37 South. 159. Evidence that some of the shot from the gun passed through the witness' clothing was also of the res gestae and admissible.

The court properly limited the defendant to proof of the charges against the deceased for violation of the ordinances of the town. Details of the acts and conduct on the part of the deceased upon which the charges were based were incompetent and inadmissible.—*Carden's Case*, 84 Ala. 417, 4 South. 823; *Gordon's Case*, 140 Ala. 29, 36 South. 1009; *Harkness' Case*, 129 Ala. 71, 30 South. 73. Moreover, the proof was without conflict that the deceased was carrying a concealed weapon and that the defendant saw the deceased when he concealed it—that the offense of carrying a concealed weapon was committed in defendant's presence; and the defendant testified that he went up to arrest deceased for carrying the pistol concealed at that time, and for "other things" before. So defendant had the benefit of the evidence that he was an officer and attempting to arrest the deceased for an offense that was committed in his presence. The defendant was a policeman at the time the killing occurred, and as such he had the authority, and it was his duty, to arrest persons for violations of the ordinances of the town; and this he could do without warrant if the offense was committed in his presence. To submit to an arrest under such circumstances was the correlative duty of the deceased. In Russell on Crimes it is stated: "In all cases, whether civil or criminal, where persons have authority to arrest or imprison, and using the proper means for that purpose, are resisted in so doing, they may repel force with force, and need not give back; and if the party making resistance is unavoidably killed in the struggle, the homicide is justifiable." —1 Russell on Crimes, 665; *Clements' Case*, 50 Ala. 117. "Social order and political government are dependent upon the observance of law by the citizen. The mandates of the law are executed by officers provided for

such purposes, and such officers are clothed by the law with the authority necessary to execute its mandates, and it affords them all the protection possible in the rightful performance of the duties imposed."

There are two theories of the prosecution in this case. The first is that the defendant of his own malice, and not in the discharge of his duty, killed the deceased to avenge a personal grievance. The second is that, if he was in good faith, attempting or intending to arrest the deceased, the circumstances did not authorize the use of the force employed. We think the evidence afforded an inference of the correctness of these theories. At the same time, the defendant's insistance on the trial was, and is here, that in good faith he was, with knowledge on the part of the deceased that he was a policeman, attempting to arrest the deceased and have him make bond for an offense or offenses in violation of the ordinances of the town committed in his presence. If the defendant was in good faith attempting to arrest the deceased, and if deceased was armed with a pistol and at the time of the attempted arrest he manifested an intention to resist the arrest, and committed an overt act which manifested an intent to immediately use the pistol under such circumstances as were sufficient to create in the mind of a reasonable man, and if they did create in the mind of the defendant an honest belief that the deceased was going to draw the weapon and immediately fire on him in resistance of arrest, then the defendant was justified in firing first.—*U. S. v. Rice*, 27 Fed. Cas. 795, No. 16,153; *Adams' Case*, 72 Ga. 85; *Boykin's Case*, 22 Colo. 496, 45 Pac. 419; *Morton v. Bradley*, 30 Ala. 683.

Upon consideration of the evidence we think, and hold, that there was some evidence which tends to support the defendant's theory, its weight, of course, was a question for the determination of the jury. Upon these considerations we hold that the court erred in declining to allow evidence of threats made by the deceased against the defendant and in declining to allow evidence tending to show that the deceased was a turbu-

[Hammond v. The State.]

lent dangerous and bloodthirsty character.—*Green's Case*, 69 Ala. 6; *Robert's Case*, 68 Ala. 156; *Meyers' Case*, 62 Ala. 599; *Burns' Case*, 49 Ala. 370; *Jones' Case*, 116 Ala. 468, 23 South. 135; *Gafford's Case*, 122 Ala. 54, 25 South. 10; *Storey's Case*, 71 Ala. 329.

It was within the irrevisable discretion of the court to allow the solicitor to recall witnesses for the defendant for the purpose of laying a predicate for their impeachment by proof of contradictory statements; and by calling them the state did not, as is insisted by the appellant, make them its witnesses.—*Jones' Case*, 115 Ala. 67, 22 South. 566; *Dudley's Case*, 121 Ala. 4, 25 South. 742; *Thomas' Case*, 100 Ala. 53, 14 South. 621; *Thompson's Case*, 100 Ala. 70, 14 South. 878; *Braham's Case*, (Ala.) 38 South. 919.

If a witness answers a question, and the answer is responsive, the party asking the question has no right to have the answer excluded. To acknowledge such right would be allowing the party to experiment. —*Toliver's Case*, 94 Ala. 111, 10 South. 428. In allowing Bart Tucker to testify that Holley testified that, "if said Tucker had exchanged pistols at his restaurant, he (Holley) would have seen it," the court erred. Such evidence was a mere conclusion of the witness Holley.— *Reeves' Case*, 96 Ala. 33, 11 South. 296; *E. T., V. & G. R. R. Co. v. Watson*, 90 Ala. 41, 7 South. 813; *Ferguson's Case*, 134 Ala. 63, 32 South. 760.

In this case 100 written charges were requested by the defendant. Careful consideration of the case will reveal to any reasonable man an entire lack of necessity for this number of charges being flooded on the presiding judge and on this court for review. Every proposition in the case, we do not hesitate to say, could have been presented and covered by a dozen written charges. Then why so many written requests? Thirty-six of the 100 charges requested were given and 64 were refused. We shall not criticise the refused charges in detail. To do so would be both unprofitable and a useless consumption of time. Of the refused charges, those numbered 55, 58 and 64 assert correct proposi-

tions and should have been given. They fall within the exception to the rule against giving undue prominence to particular parts of the evidence and the rule that charges should not be argumentative.—*Hale's Case,* 122 Ala. 85, 26 South. 236; *Perry's Case,* 78 Ala. 22; *Smith's Case,* 88 Ala. 73, 7 South. 52; *Roberts' Case,* 122 Ala. 47, 25 South. 238.

As has been intimated in a previous paragraph in this opinion, there is a tendency of the evidence to the effect that the defendant approached the deceased under the guise of making an arrest and killed· him for the purpose of wreaking vengeance on him; in other words, that the insistance that the defendant approached the deceased for the purpose of making a legal arrest is an afterthought—a mere pretense. In the light of the tendency of the evidence, those charges refused to the defendant which sought to invoke the doctrine of freedom from fault, of which No. 39 is an example, are bad. If for no other reason, they fail to hypothesize good faith on the part of the defendant in carrying the gun. Certainly, if the defendant was approaching the deceased, not having a purpose in good faith to arrest the deceased, but for the purpose of engaging in a difficulty with him, he was not without fault.—*Reese's Case,* 135 Ala. 13, 33 South. 672; *Neeley's Case,* 20 Iowa, 108; *Benham's Case,* 23 Iowa, 154, 92 Am. Dec. 416. All other refused charges were properly refused. Some of them if not inherently bad, were substantially duplicates of charges which the record shows were given for the defendant, while the others were vicious in one or more particulars.

In giving charge A for the state the court committed no error.—*Wilkin's Case,* 98 Ala. 6, 13 South. 312; *Norris's Case,* 87 Ala. 85, 6 South. 371; *Smith's Case,* 118 Ala. 117, 24 South. 55.

The oral charge of the court is not set out. Therefore we are not in position to determine the correctness or not of charge B, given at the request of the state; but, in the present state of the record we will presume in favor of the court, that the charges given for the defendant were not in conflict with the oral charge.

[Dixon v. The State.]

Charge C, given for the state, was calculated to mislead and confuse the jury, and, while it is the better practice to refuse such charges, yet the giving of the charge does not constitute reversible error.—*Caddell's Case*, 136 Ala. 9, 34 South. 191, and cases there cited.

It has been strenuously urged by counsel for the appellant that the record proper fails to show the presence of the defendant when the verdict of the jury was received. While, on account of reversible errors found in the record, it is not necessary for us to determine this question, we suggest that it is just as easy for the clerk to make the record show by direct recitals the presence of the defendant during the entire trial as it is to leave such important features to rest in inference, and more care should be taken in this respect by those who write and supervise minute entries.

For the errors pointed out, the judgment appealed from is reversed, and the cause remanded.

WEAKLEY, C. J., and HARALSON and DOWDELL, JJ., concur.