This is an appeal from a conviction of robbery and a sentence of imprisonment in the penitentiary for ten years.
Both the defendant and the victim were seventeen years of age at the time of the offense. Defendant's motion for treatment under the Youthful Offender Act was denied after an investigation and a hearing. He thereafter was duly arraigned and pleaded not guilty and not guilty by reason of insanity.
The victim, Richard Stubbs, testified that on December 5, 1975, he was employed at the Eastern Petroleum Station in Montgomery, working from 4:00 P.M. until midnight. As he was closing the station, a 1970 or 1971 LTD pulled into the station. Three young men or boys were in the car. On the trial, Stubbs positively identified one of them as the defendant. While Stubbs was waiting on another customer at the self-service station, the LTD was serviced by one of its three occupants, and one of them thereafter gave Stubbs a twenty-dollar bill, and he and Stubbs went into the station to get change. While the two were in the station, the other pulled a gun on Stubbs and robbed him of the money in the station, consisting of about two hundred dollars. The robber demanded that Stubbs get in the car with the other occupants. He was driven from the station to Hope Hull. On "an old country road" in the vicinity of Hope Hull, Stubbs was told to get out of the car. He said he did not remember anything after getting out of the car until he awoke thereafter while lying on the side of the road. He tried to get up but fell down. He remained conscious at the time for only a few minutes.
Stubbs was found in the early morning hours of December 6 by State Trooper B.S. Maggard, after his attention had been called to him by a passing motorist. Stubbs was then lying in a ditch on the side of the road with blood coming out of the back of his head and a bullet hole between his eyes. Mr. Maggard immediately summoned an ambulance, and Stubbs was taken to the Baptist Hospital in Montgomery and later was transferred to the University of Alabama Hospital in Birmingham, and treated for an injury to his brain that had been pierced by a bullet.
In their investigation of the crime, the Montgomery Police Department found the hull of a twenty-five caliber cartridge at the scene where Stubbs had been shot. A twenty-five caliber pistol was found by a fisherman on a bridge over Caney Creek in Hope Hull, two days after the crime, and turned over to a police officer. A State toxicologist testified that in his opinion the hull had been fired from the particular weapon.
Stubbs was interrogated by police officers of Montgomery, while Stubbs was in the hospital in Birmingham, and was shown some photographs, including photographs of defendant and his brothers Gregory Brown and Leroy Brown, whom Stubbs identified as the three persons in the LTD the night he was robbed.
On December 14, 1975, police officers went to the residence of the Browns, and they were taken into custody. A yellow 1971 Ford LTD, which the evidence showed had been painted yellow during the preceding week, but theretofore was a green or light blue color, was taken into custody and towed to police headquarters. A search warrant was obtained to search the automobile, and a toxicologist testified that "approximately ten dark brown Caucasian-head hairs lying over the fabric" of the rear seat were analyzed by him and compared with the hair from the head of Stubbs, and that he found "no dissimilarity between the two . . . the two samples of hair were consistent down the line, the hairs *Page 1052 
that I measured, with no unexplained inconsistencies."
In testifying on the trial, defendant emphatically denied any connection with or participation in the crime and stated that he was elsewhere during the time involved. Several witnesses supported him as to the alibi.
Appellant complains of the action of the trial court in denying defendant's pretrial motion to suppress evidence taken from the LTD automobile searched by the officers after it had been towed from the home of the Browns to police department headquarters. In the motion to suppress, it is alleged that the search "was not based on a search warrant issued prior thereto," that it was a "warrantless search." Evidence taken on the hearing of the motion was to the contrary. The search warrant had been obtained before the search was made. No point is made, or was made on the trial, to the effect that the warrant was invalid, other than the contention by defendant that it was issued after the search. In the testimony of one of the officers as to the time of day, there was an apparent conflict with the indicated time of the issuance of the warrant, but there was positive testimony that the warrant was issued well before the actual search of the automobile. The trial court was not in error in overruling defendant's motion to suppress.
It is insisted by appellant that the in-court identification of defendant and the lineup identification of defendant and his brothers were tainted in the process of a prior identification of photographs of defendant and his brothers. On a hearing out of the presence of the jury of defendant's motion to suppress the "line-up" identification of defendant, the trial judge, as well as the attorneys, interrogated the victim of the robbery, and the court concluded "that the line-up was not tainted" in denying defendant's motion. At that time counsel for defendant was apparently making a point that the victim in viewing the people in the lineup was looking for the persons whose pictures he had seen, as distinguished from the persons who were in the automobile the night he was robbed, but the witness made it clear that he had well in memory the likenesses of the men who robbed him as he viewed them at the service station and on his ride with them therefrom to Hope Hull, even though he had seen and identified pictures of them between that time and his lineup identification of defendant. After the hearing of the motion to suppress the "line-up" identification, there was some evidence by one of the officers that the pictures of defendant and his brothers were thicker than the pictures of the other black males shown to the victim, and this now seems to be the major reason for the appellant's contention that the process of photographic identification was so suggestive as to taint the lineup identification. No such contention, however, was made to the trial judge at the time of the hearing of, and the ruling on, the motion to suppress. The motion to suppress was not renewed. We would have to go beyond anything in the record before us to justify a conclusion that the difference between the thickness of the photographs of defendant and his brothers and the other photographs was of any material significance in the process of the victim's identification of the photographs of defendant and this brothers. To hold that there was undue suggestiveness would constitute an undue and unwarranted extension of United States v. Wade, 388 U.S. 218,87 S.Ct. 1926, 18 L.Ed.2d 1149 and Simmons v. United States,390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, relied upon by appellant.
Although we doubt that the point was sufficiently raised on the trial, we now consider appellant's contention that the trial court should not have admitted evidence of the shooting of Richard Stubbs. Appellant argues for the application of the general rule, that evidence of other crimes is not admissible, but the facts in this case justify the application of an exception to such rule, that if two or more crimes constitute one criminal transaction, evidence of the other crime or crimes is admissible. In Parsons v. State, 251 Ala. 467, 477,38 So.2d 209, it was stated: *Page 1053 
 "But the rule is that if several crimes in fact constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the offense with which defendant is charged. — Allison v. State, 1 Ala. App. 206, 55 So. 453; Askew v. State, 6 Ala. App. 41, 60 So. 455; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782."
Judge McElroy, citing numerous supporting authorities, has the following to say on the subject:
 "Evidence of accused's commission of another crime is admissible if such other crime is inseparably connected with, or is a `part of the res gestae' of the, now-charged crime; or, if such other crime and the now-charged crime are parts of one continuous transaction or one continuous criminal occurrence. . . ." McElroy, Law of Evidence in Alabama, § 69.01 (3).
A part of the testimony of Officer E.B. Alford, a witness for the State, was to the effect that he determined who had previously owned the pistol that was found on the bridge over Caney Creek and that it had belonged to a man by the name of Reeves, whose house had been burglarized. A part of the cross-examination was as follows:
 "Q You stated that this gun was owned by a Cornelius Reeves?
"A Yes, sir; I did.
 "Q In your investigation, Detective, did you ascertain whether this man here had ever had possession of that gun, Zane Brown?
 "A No, sir. No, no, my investigation didn't reveal that he had possession of the gun.
 "Q To your knowledge, was there any connection ever made between this man and that gun?
 "A The only connection would be that Mr. Cornelius Reeves' house is —
"Q Well, but —
 "MR. TEAGUE: Your Honor, he asked for what connection.
"MR. ALLEN: All right.
 "MR. TEAGUE: If you don't want the answers, don't ask the questions.
"Q His house was burglarized?
 "A His house was three blocks from the house that Zane Brown lives in.
 "MR. ALLEN: Your Honor, I would object and ask that that be stricken, because there's no connection between the question and answer.
 "MR. TEAGUE: Your Honor, I think, you know, it sounds as though he was embellishing his previous question, which was, was there any connection.
 "THE COURT: I'll allow, I mean, the question was asked by defense counsel and the answer was given to the best ability of the police officer, and I'll allow the jury to determine what connection, if any, there was.
"MR. ALLEN: All right.
 "Q The man who owned the pistol lived three blocks from this defendant?
"A Yes, sir; approximately three blocks.
 "Q All right. Do you have, did Mr. Cornelius tell you he let this man have the pistol?
"A No, sir.
 "Q So, other than the proximity of where he lived, do you have any reason to suspect that there would be any connection between this man and that pistol?
"A Just the proximity.
 "Q All right, sir. You are not saying that as far as your knowledge, that man was involved in a burglary, are you?
"A I have no proof of that.
 "Q You have no reason to suspect it; is that correct, as far as any investigation is concerned that you have?
"A No investigation; no, sir."
Appellant now urges that the trial court was in error in overruling defendant's request that the witness' answer: "His house was three blocks from the house that Zane Brown lives in." be stricken. Although there was possibly some jolt to defendant in the answer of the witness, the occurrence is governed by the principle that where the question of a party calls for evidence that is incompetent or irrelevant, *Page 1054 
he is precluded from any right he would otherwise have to have the answer to the question stricken. Toliver v. State, 94 Ala. 111,10 So. 428; Wright v. State, 108 Ala. 60, 18 So. 941;Hammond v. State, 147 Ala. 79, 41 So. 761; Smith v. State,19 Ala. App. 325, 97 So. 157.
An alibi witness for defendant testified that she saw defendant with his brother, Greg, about 10:30 the night of the alleged crime. On cross-examination, she was asked whether she saw Greg after that day, and she replied that she did. There was objection by defendant "to anything about any other person involved in this case," which objection was overruled. In this, there was no error. The cross-examination of the witness was within the permissible range of the testing of the recollection and credibility of the witness as to the time she saw Greg and defendant. There was neither error nor injury to defendant to be found in the court's ruling.
All of the refused charges requested by defendant, except charge 12 and charge 16, were substantially covered by the court's oral charge.
Charge 12 was a general affirmative charge in favor of defendant. Under the evidence, a jury question was presented as to defendant's guilt.
Charge 16, "The Court charges you that if the State has failed to prove, beyond a reasonable doubt and to a moral certainty that the defendant did obtain the property in question, you should find him not guilty." placed undue emphasis upon the obtaining of the property in question. There was no real controversy on the issue whether a robbery had taken place. The sole area of genuine contest was as to the identity of defendant. As he was not charged with being the sole participant in the robbery and as the victim said that defendant was not the one who actually pulled the gun on him and took the money, the charge would have been misleading and would not have correctly stated the law as applied to this particular case.
Our search of the record reveals that the evidence justified the verdict of the jury, that no error prejudicial to defendant occurred on the trial. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur except CATES, P.J., not sitting.