# Horn v. The State.

### *Indictment for Assault with Intent to Murder.*

1. *Evidence of assault; relevancy.*—Where, on a trial under an indictment for an assault with intent to murder, the person assaulted testifies that upon defendant assaulting him and drawing his pistol, witness ran and while running he heard the report of a pistol, and was stricken by a pistol ball, but did not see defendant or any one else shoot the pistol, it is competent for said witness to further testify that, on looking around immediately after being shot, he saw defendant shoot at his (witness's) wife and try to shoot his clerk; such testimony being relevant as tending to show that it was defendant who shot at the witness, as charged in the indictment.

2. *Same.*—In such a case, where the evidence tends to show that the defendant's cause of quarrel was a general one against the family of the man assaulted, for a supposed wrong done by him in his store, the testimony that defendant also attempted to shoot the wife and clerk of the man assaulted is admissible as a part of the *res gestæ* of the assault for which he was indicted, and as tending to show that the assault was made with the intent to kill.

3. *Same; when corroborating evidence admissible.*—In such a case evidence of the physical condition of the wife on the following day is admissible, as tending to corroborate the State's theory of what occurred at the time of the assault as developed by other evidence. especially if such evidence tends to discredit the evidence on the part of the defense.

4. *Statements by defendant just before and after an assault; corpus delicti.*—On a trial for an assault with intent to murder, if, after the State has introduced evidence tending to show that defendant had shot at the person alleged to have been assaulted with a pistol, the State offers to prove statements made by defendant immediately before and after the shooting, such offer is not open to the objection that the *corpus delicti* had not been proved.

5. *General charge of court to jury.*—The general charge of the court, as well as special instructions, to the jury should be confined to the

[Horn v. The State.]

statement of propositions of law arising upon or applicable to the evidence adduced in the particular case; but where the court, while delivering his general charge in a criminal prosecution, states that "there is great conflict in the testimony in this case, and in fact down right contradiction; and in my opinion there has been a great deal sworn on the stand in this case that is untrue," if such statement is correct and borne out by the transcript, and there was no intimation in such part of the charge as to what evidence the judge thought untrue, the statement, though improper, could not have prejudiced the defendant, and no error of law or fact being involved therein, the jury could not have been misled thereby, and the judgment will not be reversed therefor.

6. *Same.*—Courts, in general charges to the jury, should not go outside of the facts of the particular case being tried, and call the jurors' attention to matters that have no connection with the case; but a judgment in a criminal case will not be reversed merely because the court, in his general charge, has made statements wholly irrelevant to the case, unless it appears that the extraneous and wholly irrelevant matter thus brought to the attention of the jury has misled them, or, at least, had a natural tendency to mislead them, to the prejudice of the defendant.

7. *Same.*—A direction to the jury by the court, that "if they agreed upon their verdict by half past eleven o'clock [P. M.] they might send for him and he would receive their verdict; but if they did not agree by 11:30 o'clock, he would not come down to receive their verdict, but they would have to wait until morning;" is no ground for the reversal of the judgment, unless it is shown that the verdict might possibly have been influenced by such direction, in that it was rendered before the time named.

8. *Charge to the jury; right to believe defendant's testimony.*—On the trial of a criminal case, a charge that instructs the jury that "the defendant is authorized, under the statute, to testify in his own behalf, and the jury have the right to give full credit to his statements," is properly refused as being argumentative and misleading.

9. *Same; defendant's honest belief of imminent danger.*—On a trial for an assault with intent to murder, charges which postulate the defendant's right to shoot the person assaulted, on the former's honest belief that his life was in imminent danger, though the jury may have found that the circumstances were not such as to generate or justify the existence of such belief in the mind of a reasonable man, are erroneous and properly refused.

10. *Same; same.*—Upon the prosecution for an assault with intent to murder, a charge that predicates defendant's right to shoot and kill the person assaulted, under the other circumstances postulated, upon his mere belief that he was in imminent peril of life, and further that he had no reasonable means of retreat, however unreasonable and unjustified by the circumstances and surroundings may have been

his conclusion in each of these respects, is erroneous and properly re-fused.

11. *Same; reasonable supposition or hypothesis.*—In a criminal prose-cution, a charge that instructs the jury that "they should not find the defendant guilty, unless the evidence against him was such as to exclude to a moral certainty every supposition or hypothesis but that of his guilt," is properly refused; the law requiring that the evidence should exclude every *reasonable* supposition or hypothesis but that of guilt.

12. *Abstract charges* are properly refused.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. JAMES T. JONES.

The appellant was indicted and tried for an assault with intent to murder Isaac Rosenberg, and convicted of an assault and battery.

Upon the trial of the cause, the said Isaac Rosenberg, being introduced as a witness for the State, testified that he kept a store in Faunsdale, Ala., and that before the finding of the indictment, the defendant came to his store a little before dark, and asked the witness for five dollars, and without explaining to the witness what five dollars, or anything about the same, immediately began whipping him with a buggy whip; that thereupon the witness ran towards the back part of the store; that wit-ness saw defendant draw his pistol as he started to run; that while he was running he heard a pistol shot, and felt that he was struck; that he did not see the pistol shot by the defendant, that he saw no one shoot at him, and did not know who shot him; that after he was shot he fell down, and while in the kitchen in the back of the store, he saw the defendant shoot once at his wife, who was standing on the front porch of his store. The de-fendant objected to this testimony as to the witness seeing the defendant shoot at his wife, because it was illegal, irrelevant and immaterial, and duly excepted to the court's refusal to exclude the same. The same objection was raised to this witness testifying that after having shot at his wife, the defendant tried to shoot his clerk, who had hidden behind the counter; and to the refusal of the court to exclude this testimony, the defendant also duly excepted.

Upon the examination of one Mack Walker for the State, he testified that on the night of the difficulty be-tween Rosenberg and the defendant, he had a conversa-

tion with the latter a short time before the difficulty, and thereupon the State asked the witness to state what was this conversation. The defendant objected on the ground that the *corpus delicti* of the case had not been proved, and that the confessions and declarations of the defendant were not admissible at that time. The court overruled the objection, and to this ruling of the court the defendant duly excepted. The same objection was raised and the same ruling made and exception reserved in reference to the testimony of Tom Collins.

Upon the introduction of J. C. Brown as a witness for the State, he testified that he saw Mrs. Rosenberg the next day, and she had one eye bruised, and it was bloodshot. The defendant moved to exclude this testimony, because it was illegal, irrelevant and immaterial, and duly excepted to the court's overruling his motion.

The testimony in behalf of the defendant tended to show that on going to the store of Rosenberg, he asked to be refunded the five dollars, which Rosenberg had wrongfully taken from one of his laborers the evening before; that Rosenberg denied having taken the said money, and ordered the defendant out of his store; that upon repeating his demand for the money, Rosenberg struck the defendant, and that Rosenberg's son, wife and his clerk were holding him, and beating him when a pistol was fired; that the first shot went up in the roof of the house; that as the defendant was being held by Rosenberg's son, wife and clerk, Rosenberg came from from the back part of the store, and was advancing upon him with a knife, and when he refused to stand back, he, the defendant, fired on him. This testimony was contradicted by the testimony for the State.

The portions of the court's general charge, to which exceptions were reserved, are copied in the opinion. The defendant requested the court, among others, to give the following written charges, and separately excepted to the court's refusal to give each of them as asked: (26.) "If Isaac Rosenberg kept a public storehouse in which goods and merchandise were sold to any and every one, and if the defendant went to the storehouse of said Rosenberg on business, and if the defendant was free from all fault in bringing on any difficulty with said Rosenberg, and if said Rosenberg made an assault, together with his wife and clerks, upon the de-

fendant, and if defendant had had no reasonable means of retreat, or fired the shot at said Rosenberg under the belief that he had no reasonable means of retreat, or that in retreating he was in imminent peril of his life or limb, or if, at the time, said Rosenberg was advancing upon him with a dangerous weapon, and defendant was held by one of the clerks of Rosenberg so that he could not retreat, he had the right, under the law, to use enough force to repel the said assault, and if the jury believe that it was necessary under the evidence, for the defendant to kill said Rosenberg in order to protect himself, then the jury ought to acquit the defendant of an assault with intent to murder, and may find the defendant not guilty as charged in the indictment.'' (25.) ''If the defendant went to the store of Isaac Rosenberg, and entered the same peacefully, and did nothing to produce a difficulty, and Rosenberg thereupon assaulted the defendant, and the defendant shot at Rosenberg while said Rosenberg was assaulting the defendant, and the defendant was held and was not able to retreat, and while so held shot at said Rosenberg under the honest belief that he was in danger of great bodily harm or of imminent peril to life or limb, the defendant had a right to shoot, and the jury must acquit the defendant.'' (14.) ''If the jury believe from the evidence that the defendant went to the store of Isaac Rosenberg on business, and that Isaac Rosenberg assaulted the defendant without provocation, the defendant being without fault in bringing on the difficulty, and that the defendant was in great danger of great and serious bodily harm, or that the defendant believed honestly that his life was in imminent danger, and that to retreat would greatly imperil his life or limb, then the defendant had the right to protect himself so far as necessary to repel the assault, and if it was necessary in order for him to repel the assault for him to shoot said Rosenberg, the defendant is not guilty, and the jury ought to acquit him.'' (15.) ''If from the evidence, the jury believe that the defendant went to the store of Isaac Rosenberg on lawful business, and there got in a fight with said Rosenberg and his family, without doing anything to provoke, and being without fault in bringing on the difficulty, and if, while in said fight, it became so that he could not retreat without

great peril and imminent danger to his life, or if he
honestly believed that his life was in imminent danger,
or that he was liable to be subjected to grievous bodily
harm by retreating, the law does not make it his duty
to retreat, and he would not be guilty if he had killed
the said Rosenberg under such circumstances, and ought
to be acquitted.'' (N.) "Charge the jury that they
should not find the defendant guilty, unless the evidence
against him was such as to exclude to a moral certainty
every supposition (or hypothesis) but that of his guilt."
(B.) "Charge the jury that the testimony of a witness
for the prosecution, who is shown to be unworthy of
credit, is not sufficient to justify a conviction without
corroborating evidence ; and such corroborating evidence,
to avail anything, must be a fact tending to show the
guilt of the defendant." (I.) "Charge the jury that
when the evidence is chiefly circumstantial, that inno-
cence should be presumed until the case is proved
against the defendant in all its material circumstances
beyond any reasonable doubt, and that the evidence
ought to be strong and cogent to find the defendant
guilty as charged."

C. K. ABRAHAMS, for the Appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—The appellant, Horn, was indict-
ed and tried for assaulting with intent to murder one
Isaac Rosenberg, and convicted of an assault and bat-
tery upon said Rosenberg. The said Isaac was the first
witness examined in the cause. His testimony tended
to show that the defendant assaulted and beat him and
drew a pistol, whereupon the witness ran, and that
while running he heard the report of a pistol and was
stricken by a pistol ball, but he did not see a pistol dis-
charged by the defendant or any one else. It was, we
think, clearly competent for the prosecution to strength-
en the inference afforded by this evidence, to-wit, that
the defendant discharged the pistol, by the further testi-
mony of this witness to the effect that on looking around
immediately after being shot he saw the defendant shoot
at his, the witness's, wife, and that soon afterwards de-
fendant ''tried to shoot Tennerson, witness's clerk, who

had hidden behind the counter." Disconnected from all other evidence in the case, this testimony went to show, not only that the defendant shot at Mrs. Rosenberg, and attempted to shoot the clerk, which facts of themselves would ordinarily have been irrelevant, but, that he it was who shot Isaac Rosenberg as charged in the indictment.

2. But there is another aspect of the case in which this testimony, as well as certain other facts adduced against defendant's objection, was relevant and competent. It was in evidence that Horn conceived that the Rosenbergs, whom he referred to as "those Jews", had wrongfully taken five dollars which belonged to him from one of his "hands" (laborers) a day or two before the occurrence laid in the indictment, that he went to their place of business and residence on the occasion of the assault, declaring that "he was going down there and get his money back from those Jews, or wear his buggy whip out on them," that upon arriving there he demanded five dollars and commenced whipping Isaac, who thereupon ran, that he then shot Isaac as he ran, and immediately shot at Mrs. Rosenberg and attempted to shoot the clerk, Tennerson. It is apparent on this aspect of the evidence that Horn's cause of quarrel was a general one against the Rosenbergs, that his purpose in going there was to get five dollars from *them*, or failing this, to wear his whip out on them, and that whatever he did there was actuated by this purpose, and intended to accomplish this end; and each of his acts while thus engaged was but a part of one and the same transaction, each act throwing light upon and giving character to the whole occurrence and to every other act which then and there transpired. Very clearly, we think, the fact that he attempted to shoot the clerk, and shot at and severely beat the wife, are so connected with the assault upon Isaac as to bring all these things within the *res gestae* of any one of them, so that each would not only legitimately tend to establish the naked existence of the others, but would also have a very material and pertinent bearing upon the inquiry as to the intent which actuated the defendant throughout, in the way of showing that when he assaulted and shot Isaac Rosenberg his purpose was to kill him. There was, upon

these considerations, no error in allowing the testimony referred to to go to the jury.

3. Moreover, had defendant's acts in respect of Mrs. Rosenberg and the clerk been disconnected in point of time and place from the assault upon Isaac Rosenberg so that they would not constitute *res gestae* of the latter occurrence, they would yet be competent, in our opinion, on the principle declared in *Hawes v. State*, 88 Ala. 57, 67, where it is said : "The theory of the prosecution in this case, as developed on the trial was, that the defendant conceived that the lives of Emma Hawes, his wife, and of their children, May and Irene, stood between him and the consummation of a second marriage ; and hence that the motive which prompted the murder of each of them was the same. There was evidence tending strongly to support this theory, and to show that the death of each one of the victims was but a part of a system in which the lives of all were involved, and in the working out of which to the accomplishment of defendant's ulterior purpose, the life of each was, in substantially the same manner, ruthlessly sacrificed. Under these circumstances, all evidence going in any way to connect the defendant with the murder of his wife, or of his daughter Irene, was relevant to the issues involved on his trial for the murder of May, and was properly admitted.—*Lawson v. The State*, 20 Ala. 65 ; *Alsabrooks v. State*, 52 Ala. 25 ; *Gassenheimer v. State*, 52 Ala. 313 ; *Cross v. State*, 78 Ala. 420 ; *Ingram v. State*, 39 Ala. 247 ; *McDonald v. State*, 83 Ala. 46 ; 2 Bish. Cr. Pr., §§ 189, 235, 261, 327 ; *Com. v. Robinson*, 146 Mass. 571, and cases cited."

4. The physical condition of Mrs. Rosenberg on the following day, that is the fact that one of her eyes was bruised and blood shot, was properly allowed to be deposed to before the jury as going to corroborate the State's theory of what occurred as developed by other evidence, and also as tending to discredit the evidence on the part of the defense.

5. Some testimony offered by the State, namely, that of the witnesses Mack Walker and Tom Collins as to what the defendant said a short time before the difficulty about getting his money or whipping the Rosenbergs, was objected to on the ground that the *corpus delicti* had not been proven. It is a sufficient answer to this objec-

tion to say that the ground of it is not supported by the fact : there was abundant evidence then before the jury to authorize them to find that the offense charged had been committed.

Equally untenable is the objection to the evidence, that soon after the difficulty defendant refused to be arrested, saying that he would kill any one who tried to arrest him and that he would die before he would give up his pistol.—*Bowles v. State*, 58 Ala. 335 ; *Ross v. State*, 74 Ala. 532 ; *Sylvester v. State*, 72 Ala. 206.

The foregoing covers all the exceptions reserved to the trial court's ruling on evidence ; they are all without merit.

6. While delivering the general charge *ex mero motu* to the jury, the presiding judge made certain statements of fact to them to which the defendant reserved exceptions. Among other things, he said this : ''Gentlemen of the jury, there is great conflict in the testimony in this case, and in fact downright contradiction ; and in my own opinion there has been a great deal sworn on the stand in this case that is untrue.'' This statement is borne out by the transcript. There was much of conflict and "down-right contradiction" in the evidence, and there can be no doubt that "a great deal sworn to on the stand" in the case was untrue. The conflict and contradiction were such as to admit of no reconciliation. There was no room for the jury to reconcile all the evidence and to believe it all. The only thing open to the jury was to determine what was true and what was false in the mass of evidence, a great part of which was, in the nature of things, untrue. On this state of case, the statement of fact by the judge being unquestionably correct, and his conclusion therefrom being inevitable, it is not conceivable how the expression of his opinion as to the untruth of a great deal of the testimony could have prejudiced the defendant, since there is nothing whatever in this part of the charge which indicates in the remotest degree what part of the evidence the judge thought to be untrue, or whether he had indeed any opinion that any particular part was untrue, or which tends to at all infringe upon the jury's undoubted right to find the truth upon either side of the conflict in respect of any point. While, therefore, this part of the court's remarks to the jury is out of the common and is not to be commended, since

the general charge as well as special instructions should be strictly confined to statements of propositions of law arising upon or applicable to the evidence adduced in the case, no error of law or fact is involved in' what was said, we do not think the jury could have been misled thereby to the defendant's prejudice, and we will not disturb the judgment on account of it.

7. Again, the presiding judge while instructing the jury made the following statement to them : "Third parties often come in and take the law in their own hands, but I have been sick with fever for two days, and some of you have been sick ; but we have been here two days trying this case in order to try the case according to law, as we ought to do." The facts here stated do not appear by the bill of exceptions or otherwise in the case before us. That "third parties often come in and take the law in their own hands," may perhaps be within the judicial knowledge of courts as current history. Perhaps, also, it may be taken for granted—it is not controverted—that the judge and some of the jurors had been sick and that the trial had been in progress two days. But whether these statements were borne out by the record or not, they had nothing whatever to do with this case, no more bearing upon it than then existing weather conditions or any other casual disconnected circumstance would have had. They were outside the case and should not have been brought to the attention of the jury at all, simply because they were wholly irrelevant. But here again, it by no means follows that the judgment should be disturbed merely on account of them any more than it would follow that a judgment should be reversed because the presiding judge had called the jury's attention to the fact that the sun was shining or that rain was falling, or the like. In all such cases it must further appear that the foreign and wholly extraneous and irrelevant matter brought to the attention of the jury in this way misled them or at least had a natural tendency · to mislead them to ·the prejudice of the party excepting. We find nothing of that sort here. Certainly the fact that third parties often take the law into their own hands furnishes no reason for an unwarranted conviction by a jury, nor did the statement of that fact by the judge tend, that we can see, to prejudice the defendant. To the contrary

when taken in connection with what was further said as to its being the duty of the court and the jury to try the case according to law, and the efforts both court and jury were making under difficulties to perform that duty, it seems to us that the natural tendency of the whole was toward a fair trial and an unprejudiced result. The exception reserved in this connection can not avail the appellant.

8. Before the jury retired, the court told them that "if they agreed upon their verdict by half past eleven o'clock, they might send for him and he would receive their verdict, but if they did not agree by 11:30 o'clock he would not come down to receive their verdict, but they would have to wait till morning." It does not appear at what time the case was given to the jury, nor how long before 11:30 o'clock this was said to them, *nor whether a verdict was reached by them before that time* and received by the judge *or not until the next or some subsequent day of the term.* We will concede, without deciding, that this was an improper communication to be made to a jury by the presiding judge directly or indirectly because of its tendency to hasten their deliberations.—*Kansas City, Memphis & Birmingham Railway Co. v. Phillips,* 98 Ala. 159. But to authorize a reversal on this ground it must affirmatively appear, not indeed that the communication did, but that it might have, influenced the jury to the prejudice of the party complaining : or, in other words, the verdict must have been in fact rendered at a time and under circumstances to which the statement of the judge was applicable, and when in consequence that statement might have operated upon the minds of the jury to the defendant's detriment. Where this appears, it need not be shown, indeed can not be, that the statement in point of fact exerted any influence : the possibility of its having done so is sufficient. But this possibility itself must be shown. It is not shown in this case, for *non constat* but the verdict was reached long after the time to which the communication referred, and hence at a time to which it did not apply and when the possibility of its exerting any influence had passed away. Without meaning to indicate, therefore, what would be our ruling had it been shown here that the verdict was reached by or before eleven and half o'clock of the day on which the case was given to

the jury, we are clear to the conclusion that there should be no reversal in the absence of a showing that the verdict might possibly have been influenced by the communication, in that it was rendered within the time covered thereby. It would seem, moreover, that questions of this sort, which involve no ruling upon the law of the case as presented in the court below, should be raised by a motion for a new trial in that court.

9. Charge 24 requested by the defendant and refused is as follows: "The defendant is authorized under the statute to testify in his own behalf, and the jury have a right to give full credit to his statements." The court committed no error in refusing this request. That the defendant was authorized to testify for himself was not at all controverted : he went upon the stand and did testify fully without the slightest objection. That the jury had the legal right to believe him nobody denied. This is, of course, implied in his right to become a witness, and is true in all cases where the defendant avails himself of this right. The purpose and only possible effect of the instruction was, not to establish these unquestioned rights of the defendant to testify and of the jury to give credit to his evidence, but to draw an inference that he was entitled to credence from the fact that the statute gave him the right to become a witness, and thus to give him a factitious standing in that capacity before the jury, and to meet the deduction against his credibility which counsel had drawn or the jury might draw from a consideration of his interest in the result of the trial.

The charge was, therefore, a mere argument which might possibly have been given without error, but the refusal of which was equally without error. Moreover, its last clause involved a tendency to mislead the jury, under the particular facts of this case, to an assumption of the right to capriciously believe the defendant without due consideration of the other testimony before them.

10. Charges 14, 15 and 25 refused to the defendant are faulty in that in one of the alternatives of each they postulate the defendant's right to shoot Rosenberg on the former's honest belief that his life was in imminent danger, though the jury may have found that the circumstances were not such as to generate or justify the existence of such belief in the mind of a reasonable man.

11. Similarly charge 26 requested by the defendant was bad, in that it predicates defendant's right to shoot and kill Rosenberg, under the other circumstances it postulates, upon his mere belief that he was in imminent peril of life and his further belief that he had no reasonable means of retreat, however unreasonable and unjustified by the situation and surroundings may have been his conclusion in each of these respects.

12. It is sufficient to say of charge "I" refused to the defendant that it is patently abstract : the evidence in the case is *not* "chiefly circumstantial;" and of charge "B" that it assumes that a witness for the prosecution had been "shown to be unworthy of credit." Both these charges are faulty in other respects.

13. Charge "N" refused to the defendant is bad, as has been often held by this court, in that it requires too high a degree of proof for conviction. It is not necessary thereto that the evidence should exclude *every* supposition or hypothesis but that of guilt, but only that every *reasonable* supposition or hypothesis but that of guilt should be excluded.

There is no error in the record, and the judgment of the circuit court is affirmed.