36 So.2d 899

### POPE v. STATE.
#### 6 Div. 662.

Supreme Court of Alabama.

June 17, 1948.

Rehearing Denied Oct. 14, 1948.

 

Beddow & Jones, Roderick Beddow and G. Ernest Jones, Jr., all of Birmingham, and Finis E. St. John and Earney Bland, both of Cullman, for appellant.

A. A. Carmichael, Atty. Gen., and Richard S. Brooks, Asst. Atty. Gen., for the State.

FOSTER, Justice.

This appellant was convicted of the murder of Wallace Dean, and sentenced to life imprisonment.

There was no testimony directly connecting anyone with the crime. His dead body was found in the country about fifteen miles from Cullman where defendant lived, near the entrance of a driveway to a residence. The resident, Mrs. Virgil Sizemore, was at a neighbor's one-fourth of a mile away, but in sight, and she saw the light of a car stop in her driveway, and heard the report of a gun or pistol from the direction of the car, which then backed into the highway, turned around, and went back in the direction from which it came, toward Cullman. She later saw what appeared to be another car drive up and stop. She then drove her own car to the scene and found a truck there, which belonged to Andrew Bell; and there were present Ed Sizemore and Andrew Bell, who were investigating the situation. Wallace Dean was there dead. It was shown that he was shot in the back. Mrs. Sizemore lived on the south side of the road and Ed Sizemore, her brother-in-law, lived on the north side. There was nothing to connect Ed Sizemore and Andrew Bell with the murder. This occurred about 8:10 at night on July 26, 1946. Robert Woodard was tried and convicted of murder with a life sentence. This defendant was then immediately put upon trial. The evidence against this defendant was largely circumstantial.

Fay Kelsoe was a witness for the State, supplying an important link in the chain of circumstantial evidence. She was held in jail as a witness in the case. During the progress of the trial, after she had testified, she was recalled by defendant and asked certain questions with reference to a conversation between her and defendant's two attorneys, Earney Bland and Finis St. John, whom she requested to go to the jail for the interview the preceding night. A predicate was laid to her asking if in that conversation she did not make certain

statements to them. She denied doing so. The two attorneys testified to substantially the same. We quote a part of the testimony of Mr. Bland as follows:

"She promptly stated, she says: 'How about the Pope and Woodward cases?' Well, Mr. St. John in substance stated that they were getting along as best we could. She turned around and said that everything—'Everything that I told about being out at the brick yard—at the rock crusher with those two men was a lie'; that she was not there and she said that her little sister was not there, but she said that she was there on another time.

"Mr. St. John said to her: 'When was that?' or something to that effect. She said—No, he asked her was that before or after the killing. She says: 'I was there after the killing,' and then he said to her: 'You were not there the night of the killing?' And she said 'No.' I asked her—I says 'Fay, all that you said about Mr. Pope on the witness stand and this woman and you being out at the rock crusher, is a lie?' And she said 'That is right.' Then I asked her why she made that statement. She said that the officers —I believe may be she mentioned Mr. Hyatt (the sheriff) and somewhere or another she mentioned Mr. Miller's name, (that) he pressed her and pressed her, and told her that she was in a mess, and that she was going to the penitentiary, and, after pressure, she just told them yes, she was out there; and she said, 'I was, but it was at a different time.' Then she says, 'After I told them that, they told me if I ever changed my story, that I would go to the penitentiary.' And she took her finger and pointed up that way, she says, 'Those two boys right up there are going to the penitentiary on what I swore, and it is a lie.' Mr. St. John said to her, he says: 'Fay,'—we were talking slowly, possibly slower than I am talking— he says 'if the judge was to come down here and talk to you in substance of what you have said to us, would you tell him?' She says: 'I will tell him if he will assure me that I won't be sent to the penitentiary,' but says 'without that, I will never do it.' Well, we stayed in there, my opin-

ion not less than a quarter of an hour, between that and twenty minutes. I will say another thing, that we didn't ask her any questions when we sent in there except she told us she had called for us over the telephone."

Thereafter, and in rebuttal, the State recalled sheriff Hyatt as a witness and proved, over the objection of defendant, that when Fay Kelsoe came to his office and told him what she knew about the matter in the presence of Mr. Miller, quoting him, "I talked to her about an hour I guess, trying to see, you know, if she was lying," and "I told her that if she swore a lie, she would be charged with perjury; and she wanted to know what that was, and I explained it to her the best I could. I told her if she got on the stand and swore a lie, that she would be indicted for perjury and sent to the penitentiary; and I told her if this story wasn't so, not to get on the stand and tell it. That was all the threat that was ever made."

The witness then testified in response to questions that she came to his office several times, "every afternoon for a week but one." "She came in every time." He did not go after her. And as she told him of this incident she sat there and cried very much. And she was crying and sobbing so long that he had to wait sometime. There was much of such detail given by the sheriff in answer to questions. Defendant's attorneys made general objection to each question, and sometimes moved to exclude the answer. No specific ground was assigned to the objections or the motion.

It is noted that in that conversation with the attorneys, they testified that she told them that sheriff Hyatt and Miller pressed her and pressed her, and told her she was in a mess and going to the penitentiary, and after pressure she told them what occurred as she testified on the trial, and they (the sheriff and Miller) told her if she ever changed her story that she would go to the penitentiary.

■ That testimony by Hyatt as to whether or not he told her that, and what occurred at the various trips she made to his office, could not have been used as in-

dependent evidence against defendant, over his objection. James v. State, 115 Ala. 83, 22 So. 565. No one had testified that he pressed her and under pressure she had told her story to the sheriff, and that what she told the sheriff was a lie, and that he told her if she changed her story she would go to the penitentiary. The evidence of the sheriff was therefore not a denial of any testimony given in court, nor an explanation of any such testimony. The State was apparently trying to support her testimony, in which she denied making the statement to the attorneys as to the occurrences with the sheriff by proving by the sheriff that those occurrences were different from what the attorneys said she told them. Such proof by the sheriff cannot legally be used to support the testimony of the witness, in which she simply denied that she made certain statements to the attorneys as to those occurrences with the Sheriff. Haywood v. State, 12 Ga.App. 240, 76 S.E. 1077; Pope v. State, 168 Ala. 33, 53 So. 292; James v. State, 115 Ala. 83, 22 So. 565; Long v. Whit, 197 Ala. 271, 72 So. 529; Jones v. State, 107 Ala. 93, 18 So. 237.

We have noted that the objection and motion to exclude were general, and assigned no specific ground. The rule is that a general objection should be sustained only if the evidence is illegal for any purpose and cannot be made legal by other evidence or by otherwise framing the inquiry. Louisville & Nashville R. Co. v. Scott, 232 Ala. 284(17), 167 So. 572; Bennett v. Bennett, 224 Ala. 335(9), 140 So. 378; Williams v. Bolding, 220 Ala. 328(7), 124 So. 892; Sanders v. Knox, 57 Ala. 80.

The matters here brought out by the State from the testimony of sheriff Hyatt were not legal for any purpose and could not be made legal sofar as shown by the record. It was therefore reversible error to overrule the objection to it, and to overrule the motion to exclude.

We need not consider the other rulings of the court as they may not occur on another trial.

Reversed and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.

On Rehearing.

PER CURIAM.

Rehearing overruled

BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.