38 So.2d 209

PARSONS v. STATE.

6 Div. 697.

Supreme Court of Alabama.
Dec. 23, 1948.

See also 33 Ala.App. 309, 33 So.2d 164.

G. Ernest Jones, Jr., Beddow & Jones, Roderick Beddow and G. Ernest Jones, Sr., all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

FOSTER, Justice.

Appellant was convicted of robbery, and he appeals.

When appellant was arraigned in the Circuit Court of Jefferson County, he called to the attention of the court a motion which he had filed on that day. It was taken under advisement, but not acted on that day. The motion required that a subpoena duces tecum be issued to George D. King, Herbert Osborne, and John D. Hill, and that said witnesses be required to produce a certain package containing watches and other articles, which package was delivered to Perry Jewelry Company by mail several days subsequent to the robbery. It also requested that the court require those witnesses to produce every written report and statement of any finger print expert in connection with the package. The motion further called on the court to request the Attorney General of the United States to order employees of the Justice Department to produce those articles in court.

When this motion was called to the attention of the judge on the first day of the trial, it appeared that Mr. Osborne and Mr. King, who were named in the motion, were present in court, and that they were requested by counsel, Mr. Macy Taylor, from the United States Attorney's office. The articles, however, were not produced before the trial started, and counsel for the witnesses presented to the court a general order of the Attorney General of the United States stating that under the authority of Title 5 U.S.C.A. § 22, all articles in the custody of the United States Attorney and in the custody of the Federal Bureau of Investigation were confidential, and could not be produced except upon consent of the Attorney General. This order was copied into the record in the case by the trial judge. At this point in the case, the trial judge refused to require the articles and things named in the motion to be produced in court, or to request the Attorney General of the United States to order employees to produce them.

After the State rested its case, the defendant called Mr. Herbert Osborne, an F.B.I. agent who had investigated the case, to the stand, and asked him certain questions concerning the package described in the motion for subpoena duces tecum. The witness refused to answer on the basis of the rule or regulation of the Attorney General heretofore referred to. The witness was not required by the court to answer.

The principle seems to be well settled that communications between the Government and its agents are privileged, else due administration of justice and government could not proceed. For many years it has been settled law that a government official cannot be compelled to disclose the name of an informer. But there is an exception recognized by the cases based on constitutional grounds which is that if it appears that the informer's name is necessary or desirable to show the prisoner's innocence, the official can be required by the court to make the disclosure. United States v. Li Fat Tong, 2 Cir., 152 F.2d 650; Wigmore on Evidence (3d ed.) section 2374, page 756(4):

"If what is asked is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is es-

sential to the proper disposition of the case, disclosure will be compelled." Wilson v. United States, 3 Cir., 59 F.2d 390, 392; Centoamore v. State, 105 Neb. 452, 181 N. W. 182, 192; Regina v. Richardson, 3 Foster & F. (Eng.) 693; Marks v. Dreyfus, L.R., 25 Q: B. D. 494.

Again it is said in another case:

"We are clear that the conversations of government detectives and other agents with witnesses, with the purpose and effect of inducing and influencing the evidence of such witnesses, do not rise to the dignity of state secrets, and, when a witness so induced or influenced appears on the stand and testifies, he may be cross-examined as to any and all inducements made to him on the part of any one in connection with his evidence; and we think it would be intolerable for government agents to be allowed to give inducements to witnesses, and not have the same freely exposed on the witness stand, so as to inform the court and jury as to the proper weight of the evidence given." King v. United States, 5 Cir., 112 F. 988, 996.

Again it is said by the United States Supreme Court: "Public policy forbids disclosure of an informer's identity unless essential to the defense". Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 176, 83 L.Ed. 151.

Title 5, section 22, U.S.C.A. provides that "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

The court was informed, not by formal proof, that by authority of that statute, the United States Attorney General did on May 2, 1939, make an order No. 3229, as follows:

"All official files, documents, records and information in the offices of the Department of Justice, including the several offices of United States Attorneys, Federal Bureau of Investigation, United States Marshals, and Federal penal and correctional institutions, or in the custody or control of any officer or employee of the Department of Justice, are to be regarded as confidential. No officer or employee may permit the disclosure or use of the same for any purpose other than for the performance of his official duties, except in the discretion of the Attorney General, the Assistant to the Attorney General, or an Assistant Attorney General acting for him. Whenever a subpoena duces tecum is served to produce any of such files, documents, records or information, the officer or employee on whom such subpoena is served, unless otherwise expressly directed by the Attorney General, will appear in court in answer thereto and respectfully decline to produce the records specified therein, on the ground that the disclosure of such records is prohibited by his regulation."

There had been previously a somewhat similar order.—Section 65, Rules of the Division of Investigation.—See, 165 A.L. R. 1348, note.

■ Of course, the Revised Statute, supra, could not authorize a rule whose effect was to deprive one of his constitutional rights, and it does not give such authority in terms. The regulation must not be inconsistent with law, to be supported by that statute. The United States Constitution is superior to all other laws in these United States.—Article 6, Clause 2, Constitution of the United States.

■ The Fourteenth Amendment prohibits a state from depriving any person of life, liberty or property without due process of law. Our State Constitution is to the same effect, Article 1, section 6, and the Fifth Amendment to the Constitution of the United States restricts the federal government in respect to due process. 16 Corpus Juris Secundum, Constitutional Law, § 568, page 1146; Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.

■ "It is settled by many recent decisions of this (United States Supreme Court) court that a regulation by a department of government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision."

Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155, 157, 64 L.Ed. 297; 42 Am.Jur. 432, section 102; Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Ex parte Sackett, 9 Cir., 74 F. 2d 922; Stegall v. Thurman, D.C., 175 F. 813.

■ And the courts take judicial notice of them. Lawrenceburg Roller Mills Co. v. Chas. A. Jones & Co., 204 Ala. 59, 85 So. 719; State v. Friedkin, 244 Ala. 494, 14 So. 2d 363; Caha v. United States, 152 U.S. 211, 221, 14 S.Ct. 513, 38 L.Ed. 415.

■ Whether a law or regulation as applied to a given situation is violative of due process is finally a judicial question. Danoff v. Larson, 368 Ill. 519, 15 N.E.2d 290; 16 Corpus Juris Secundum, Constitutional Law, § 151, page 454, note 89; Marbury v. Madison, 1 Cranch 137, 139, 2 L.Ed. 60; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160; 11 Am.Jur. 712, 713, sections 87 and 88.

■ The decision of the United States Supreme Court is alone finally conclusive as to the validity of a statute or its application, when the question is controlled by the Federal Constitution. 11 Am.Jur. 740, section 104; United States v. Reynolds, 235 U.S. 133, 35 S.Ct. 86, 59 L.Ed. 162.

■ It is clear that under the federal statute, Title 5, section 22, supra, each department head can make rules and regulations to preserve its records and keep them secret from disclosure by its agents. And that such regulation has the force and effect of law, and the court has no jurisdiction or power to punish such an agent for conforming to that law. This is said to be because the head of the department became thereby the exclusive custodian of such matter, and he has a right under the Revised Statute by rule to take from a subordinate all discretion as to permitting the records and information in his custody to be used for any other purpose than that of the department, although they may be material evidence in the trial of another case. Ex parte Sackett, 9 Cir., 74 F.2d 922; Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Stegall v. Thurman, D.C., 175 F. 813; Caha v. United States, 152 U.S. 211, 221, 14 S.Ct. 513, 38 L.Ed. 415; In re Valecia Con-

densed Milk Co., 7 Cir., 240 F. 310; United States ex rel. Bayarsky v. Brooks, D.C., 51 F.Supp. 974; United States v. Cohen, 2 Cir., 148 F.2d 94; 165 A.L.R. 1348.

■ In the case of United States v. Andolschek, 2 Cir., 142 F.2d 503, 506, the trial court, which was a federal district court, excluded certain official reports made by defendants pertaining to the criminal charge of conspiracy pending against them. They were excluded when offered by defendant because the trial court thought their disclosure was forbidden by a regulation of the Treasury Department, quite similar to that of the Department of Justice here under consideration. It was not a question there of requiring the department agent to produce the documents in violation of the rule, but their exclusion as evidence was rested on the ground that the regulation forbade their use as evidence. A distinction was drawn between that case and Ex parte Sackett, supra, Boske v. Comingore, supra, and Stegall v. Thurman, supra, by observing that those cases did not involve "the prosecution of a crime consisting of the very matters recorded in the suppressed document, or of matters nearly enough akin to make relevant the matters recorded. (and) That appears to us to be a critical distinction." Also that this "prosecution necessarily ends any confidential character the documents may possess." "The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully." It seems to have rested on the theory that the department and court were both arms of the Government, which could not with one arm keep the matter a secret and with the other at the same time prosecute a crime in which it is material evidence. But it seems to us that there is another "critical" distinction, when it is offered as material evidence in any sort of case. In the Sackett case, supra, Boske v. Comingore, supra, and Stegall v. Thurman, supra, the question whether the department agent should be held in contempt of court for not producing the evidence in violation of the rule, not whether the rule would make such evidence inadmissible if it is produced by the proper authority; and the Sackett case, supra, refers to an opinion

of the attorney general pointing the way to its proper production, thereby intimating that it would be admissible on the evidence of the attorney general. But in the Andolschek case, supra, the question was whether the reports made by defendant lost their confidential character as evidence by reason of the prosecution in the federal court involving an inquiry to which the reports were related. We think the cases may also be reconciled on the theory that if the evidence can be obtained in a way which is consistent with law and the Constitution, and it is then and there present in the state court, its relevancy and admissibility as evidence is one for the state court to determine under the Fourteenth Amendment, and the court is not then controlled by the department rule. We do not find that the United States Supreme Court has rendered a decision which affects the admissibility of the evidence or its exemption from the rules of evidence, or the effect of the due process clause, when its custody has been properly obtained and it is offered in evidence. We think that due process would relieve any confidential nature of the proposed evidence, such as applies to the department agents, and would demand its allowance as evidence. This principle applies, as we have shown, to the matter of disclosing the name of an informer when it is material to the proper disposition of the case.

 The subpoena duces tecum and the motion to require production showed that the information sought appeared to be matter material to the defense of defendant on trial.—Ex parte Hart, 240 Ala. 642, 200 So. 783; United States v. Andolschek, supra. Neither the State court nor the Department of Justice is the final arbiter of the applicability of the Fifth Amendment. But the primary duty and power in respect to the control of its agents is with the department, with a superior right in the judiciary to determine whether the Constitution is violated.—11 Am.Jur. 712–713, section 87.

 Here the witness is obeying what is required of him under the general order and regulation. The trial court declined to make him violate it. It was of course within the province of the court,

and not the witness, to decide whether to obey the subpoena.—Ex parte Hart, 240 Ala. 642, 200 So. 783; Wigmore on Evidence (3d Ed.) section 2200, page 117. We think the trial court acted correctly in ruling as he did in that respect.

 The question arises then as to what the court must do in the matter of securing material and legal evidence, which is in the custody of the Department of Justice when the subordinate who has its actual care is prohibited by a valid rule to disclose it. The court must grant to defendant due and compulsory process, and therefore must do all that defendant calls upon it to do within the legal power of the court to obtain the evidence.—Section 6, article 1, Constitution of Alabama. Defendant moved the court for an order requesting the Attorney General of the United States to permit its disclosure. This was a preliminary motion in advance of trial. The court denied it. Defendant moved a continuance of the case, and that was denied. Informal information to the court that the Attorney General had advised the United States District Attorney at Birmingham not to permit a release of the matter for use in this case is not conclusive as to what he would do in response to a formal request by the court.

In an opinion of the Attorney General of the United States, reported in Vol. 25, page 326, and referred to in the Sackett case, supra, it is pointed out that the head of a department has in some cases responded to a subpoena as a witness, as did Attorney General Lincoln in Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60, and on the trial of Aaron Burr, Chief Justice Marshall observed that he knew of no law or authority which prohibited a subpoena duces tecum to the president of the United States. The attorney general was inclined to think that the head of a governmental department is not bound to appear and testify in obedience to a subpoena, although Attorney General Lincoln saw fit to respond to a subpoena, and testified in Marbury v. Madison, supra. But since the procedure which the attorney general was then dealing with was to take the deposition of the officer, he observed "an arrangement might readily be made which

would better comport with the dignity of your office as head of an executive department of the Government (Secretary of Commerce and Labor), whereby such testimony as you should deem proper and advisable to give, could be taken at the Department of Commerce and Labor."

■ Whether the refusal of the Attorney General to give the evidence or release it would violate the Fifth Amendment to the Federal Constitution would first be subject to his determination, but reviewable by proper judicial authority. The province of the state trial court is to award due process under the Fourteenth Amendment of the Federal Constitution, and section 6 of article 1 of the Alabama Constitution.

■ We think the appropriate and dignified approach was as conducted in this case, that is, to move the court to request the Attorney General of the United States to make provision for the production of the information. If he declines to do so on request, the trial court has done its duty so far under the Constitution to provide due process. Then if defendant wishes to pursue the matter further, the way is open as pointed out in the opinion of the United States Attorney General, quoted supra, by undertaking to secure the deposition of the Attorney General, or to require him to release it as evidence.

We think the court should have granted the timely motion to request the Attorney General of the United States to release the evidence, and upon declining to grant the motion, the trial should have been continued on further motion, to give an opportunity to secure the evidence by deposition or otherwise in pursuit of due diligence.

■ If defendant sees fit to pursue this matter further, he should act with due diligence so as to have such evidence available, if possible, when the case comes up for trial again.

### Proposition numbered III.

The next proposition insisted on by appellant relates to the introduction of evidence of what is thought to be another distinct crime, contrary to the rules which apply to such evidence.

Defendant was indicted for robbery from the person of Louis W. Perry, an automobile and a set of keys. The evidence tended to show that this occurred at the home of Perry. The automobile and keys were used to aid in effecting a burglary and larceny from the store of Perry of valuable jewelry. Since the indictment charged the robbery of Perry of the keys and automobile, it is claimed that evidence of the burglary and larceny from the store is of another crime and not permitted by law.

■ But the rule is that if several crimes in fact constitute one criminal transaction, evidence of all such crimes may be given as part of the res gestae of the offense with which defendant is charged.— Allison v. State, 1 Ala.App. 206, 55 So. 453; Askew v. State, 6 Ala.App. 41, 60 So. 455; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782.

■ This defendant was not present in Perry's home when the keys and automobile were taken, but is alleged to have participated in the burglary and larceny from the store. If the burglary and larceny were aided by the robbery at Perry's home, they were material in connecting defendant with participation in the robbery, and admissible for that purpose.—Robinson v. State, 243 Ala. 684, 11 So.2d 732; Sweeney v. State, 25 Ala.App. 220, 143 So. 586, certiorari denied, 225 Ala. 381, 143 So. 588.

### Proposition numbered IV.

■ We do not agree with appellant that the fact of the report made to the police, to which objection was overruled, constituted reversible error in that it violated the principle that a witness cannot bolster his testimony by showing that he made statements to others which corroborated such testimony. The substance of what was reported to the police does not appear. Horace Pope v. State, Ala.App., 36 So.2d 899.

This is also true in respect to the testimony of R. L. Key as it appears on pages 259-261 of the record: Appellant's proposition VI.

■ The witness Mrs. Argo testified, apparently from memory, to the tag number of an automobile alleged by her to have

been driven by defendant, tending to connect him with the burglary of the store. She also testified that she then and there wrote the tag number on a piece of paper, and put it in the glove compartment of her car. The court permitted the State, over defendant's objection, to introduce this memorandum. The rule declared in Acklen's Ex'r v. Hickman, 63 Ala. 494, 35 Am. Rep. 54, in this connection is that if the witness testifies to facts within his knowledge and memory, although refreshed by the memorandum, the memorandum is not admissible. It is admissible when after consulting it, she still does not remember the facts, but that she wrote the memorandum at the time of the occurrence, and knew it was correct when she wrote it. Sovereign Camp, W. O. W. v. Screws, 218 Ala. 599, 119 So. 644.

■ There was error in respect to the admission of the memorandum on the basis of that rule. We need not consider whether the ruling was reversible error under Rule 45, as the error will probably not occur on another trial.

### Proposition numbered V.

■ The court first ruled that it was competent to prove that Mrs. Argo viewed several lines up of men in Atlanta, and did not identify any of them, and then reversed his ruling and excluded it, and made it plain to the jury that it was excluded and not to consider it for any purpose. Defendant then moved for a mistrial because the testimony and its effect were irreparable. This was overruled and exception noted. We do not think there was error in denying the motion, assuming that the evidence so excluded was not admissible.

### Proposition numbered VII.

■ It is sometimes competent to show that defendant was heavily in debt when he is charged with the larceny of money. Lee v. State, 20 Ala.App. 334, 101 So. 907, certiorari denied, Ex parte Lee, 212 Ala. 135, 101 So. 909; 52 Corpus Juris Secundum, Larceny, § 124, page 949; 36 Corpus Juris, § 475, page 894; Martin v. State, 104 Ala. 71, 16 So. 82; Leonard v. State, 115 Ala. 80, 22 So. 564.

But we do not think that defendant can prove in every such case that he was worth a considerable amount to show an absence of motive. Dorsey v. State, 110 Ala. 38, 20 So. 450.

We may observe that it is a trait of human nature that one possessed of substantial values in property is usually not satisfied, and wants more.

It was held in Reynolds v. State, 147 Ind. 3, 46 N.E. 31, 33, that in a prosecution for robbery evidence that defendant is possessed of certain valuable property is not admissible. It was said: "This motive * * * has influenced the conduct of rich persons as well as poor persons. Men do not rob or steal except as they have a desire to do so, but such desire does not come so much from the poverty of the individual, as from the absence of a moral sense, and from the desire to possess at all hazards something that does not belong to him."

In some cases it is said that where the issue is the intent of a defendant to injure an insurance company by setting fire, to collect indemnity on insurance policies, there is probative force in the evidence that defendant was in good financial circumstances, and not in need of money. Commonwealth v. Cooper, 264 Mass. 368, 162 N.E. 729; Regina v. Grant, 4 Foster & F. (Eng.) 322. This question is given consideration in 2 Wigmore (3d Ed.) section 392, pages 342-3, showing that sometimes in peculative cases, civil and criminal, including larceny and robbery, the strong financial condition of defendant is material to show absence of motive.

■■ We think the true answer depends upon the circumstances and incidents of the occurrence. The materiality of the evidence must be determined by the probability of it being influential under the circumstances. Here was the burglary and larceny of a large amount of valuable jewelry in connection with the robbery, evidently done by experts and daring men in a conspiracy. It looks like the work of professionals. Whether they or any of them were possessed of substantial wealth, not illustrative of some specific defense, would not be material. We could well see in con-

nection with evidence of good character or an alibi that a strong financial status could sometimes be material. There is here no such evidence of matter which would be aided by such status. No defense of good character or alibi was here offered, nor any other defense which could be reasonably affected by the financial status of defendant.

### Proposition numbered VIII.

The same principle of law applies to evidence of the financial condition of Perry, whose store was burglarized on October 30, 1947, the date of the occurrence in question. The defendant offered to prove by Perry, on cross-examination, that during the years 1946 and 1947 to the time of the crime, he was in straightened financial condition, and in dire need of money, and had been gambling and lost a considerable amount in 1946 and 1947, down to October 30, 1947. There was evidence that Perry had theft insurance on some of the items of stolen property, but not on others, and that those not insured were returned by mail. The package was sought to be obtained as evidence by defendant from the F. B. I. agent, which effort we have discussed.

■ The defendant contended that Perry impliedly consented to the robbery for his gain by reason of the insurance, and that his resistance, if such it be, was simulated, and that there are circumstances which tend to support that theory. Their weight is not for us to decide. We think that proof of Perry's financial condition and his gambling losses in connection with evidence of his insurance against the loss would be material on the authority of the cases we referred to in proposition VII, supra. This theory is observed in many situations. Barnes v. State, 31 Ala.App. 187, 14 So.2d 242.

### Proposition numbered IX.

We do not think it is necessary to pass on the question here raised. It is not likely to occur on another trial. The same is true as to appellant's proposition XI.

### Proposition numbered X.

The evidence here referred to tended to shed light on the different aspects of the questions involved. It was not harmful to defendant.

### Proposition numbered XII.

This relates to the refusal of the court to give three written charges to the jury, Nos. 15, 16 and 37. They are to the effect that if the robbery was simulated or pretended and with Perry's collusion, there can be no conviction of robbery.

■ There is no statutory definition of robbery, but the common law definition is the felonious taking of money or goods of value from the person of another or in his presence, by violence to his person, or by putting him in fear. Douglass v. State, 21 Ala.App. 289, 107 So. 791; 46 Am.Jur. 141, section 5. This requires an absence of voluntary consent on the part of the person robbed. 46 Am.Jur. 150, section 22; Davis v. State, 159 Ala. 104, 48 So. 694; Allen v. State, 40 Ala. 334, 91 Am.Dec. 476.

In the oral charge of the court there was no mention made of the effect of the consent of the person alleged to have been robbed. In defining robbery to the jury the court gave the usual common law definition. That does not use the word consent. It is implied in the requirement that it must be done by force or putting him in fear. There could be no real force if the person robbed consented voluntarily. And it could not be accomplished by putting him in fear if he voluntarily consented.

■ The evidence was that Perry had insurance against theft, and defendant contended that the occurrences at his home at the time the keys and automobile were obtained in connection with all the other circumstances shown were sufficient to submit to the jury the question of whether Perry's resistance was simulated or pretended and that he was not averse to the whole proceeding. On that theory, those charges (15, 16 and 37) were requested, and were not directly covered in the general charge, though impliedly so.

But we think given charges Nos. 8 and 14 directly covered the material matter in them. The court was not required further to emphasize the same thought. Title 7, section 273, Code.

## Proposition numbered XIII.

 This relates to an inquiry made by the jury to the court after they had retired and returned for further instructions. The particular inquiry appears in the record as follows: (The juror) "There are different members of the jury that have asked if Mr. Perry, if it be a fact that he knew that a robbery was to be committed at his store, or that his keys or automobile were to be stolen, if he knew that was to be done himself, would the defendant in this case still be guilty of robbery or would he be guilty as charged in the indictment." The court answered by repeating the definition of robbery in the terms of the common law, as he had done in his oral charge, and stated that it must have been against Perry's will. Defendant's counsel requested the opportunity to write a charge to be given on the subject of the inquiry made by the jury. This privilege was refused, exception taken, and the jury directed to retire and further consider the case. After the jury retired, again defendant's counsel insisted on such privilege, which was again denied, though two charges had then been written and were requested to be given. They are charges C and D. The court declined to consider them.

It is our view that this procedure was not error. It was in the discretion of the court to give more emphasis to the question of Perry's consent. We do not think it was reversible error not to do so.

## Proposition numbered XIV. Refused Charge No. 11.

 The trial court is sometimes justified in charging the jury that they should consider a certain interest of a witness in passing on his credibility. Tillis v. State, 218 Ala. 527(9), 119 So. 215. But it is not reversible error to refuse such a charge since it would be argumentative. Robertson v. State, 162 Ala. 30, 50 So. 345; Mitchell v. State, 133 Ala. 65, 32 So. 132; Horn v. State, 102 Ala. 144(8), 15 So. 278; Sanderson v. State, 236 Ala. 27, 181 So. 508.

The charges 55, 58 and 64, held in Hammond v. State, 147 Ala. 79, 41 So. 761, proper and that they should have been given, are materially different from No. 11 now under consideration.

## Proposition numbered XV. Refused Charge No. 13.

 Similar charges have been approved where the evidence connecting defendant with the crime is wholly circumstantial. Colvin v. State, 32 Ala.App. 142, 22 So.2d 544, reversed on other grounds, 247 Ala. 55, 22 So.2d 548; Dyson v. State, 28 Ala.App. 549, 189 So. 784; Tatum v. State, 20 Ala.App. 24, 100 So. 569; James v. State, 22 Ala.App. 183, 113 So. 648; Dutton v. State, 25 Ala.App. 472, 148 So. 876; Ott v. State, 160 Ala. 29, 49 So. 810; Ex parte Acree, 63 Ala. 234. But not when the evidence is not wholly circumstantial. McDowell v. State, 238 Ala. 101(16), 189 So. 183; Dutton v. State, supra; Pickens v. State, 115 Ala. 42, 22 So. 551; Salm v. State, 89 Ala. 56, 8 So. 66.

The evidence connecting defendant with the crime was not wholly circumstantial by any sort of standard.

## Propositions numbered XVI and XVII. Refused Charges 5, 6 and 7.

 These charges could well have been refused as argumentative, not now considering them on the basis of other standards.

## Propositions numbered XVIII, XIX and XX.

The statements of the solicitor here made the subject of objection are not objectionable for any reason urged by counsel or apparent to us.

We have reviewed all the contentions made on appeal and examined the entire record.

We think the judgment should be reversed for the reasons indicated above.

Reversed and remanded.

BROWN, LIVINGSTON, LAWSON and STAKELY, JJ., concur.